O. R. AND R. R. MORRISON V. A. FAULKNER.

No. 3089.

1.  Practice—Failure of Judge to File Conclusions, etc., for Want of Time.—
The trial closed at 4 p. m. of the last day of the term.   On being requested to file con-
clusions of fact and law the judge refused to do so because the other business of the
term which necessarily had to be transacted would consume his time until the hour of
adjournment.   Such refusal furnishes no just ground for complaint on appeal.

2.  Power of a Member of a Firm to Execute a Note in Firm Name.—See
facts held sufficient to show that a promissory note in name of the firm by one of its
members in payment for land bound the members of the firm.

3.  Duress—Threat of Criminal Prosecution.—The threat of criminal prosecu-
tion for swindling involved a threat to arrest and imprison.   A contract made under a
threat of unlawful imprisonment, the fear induced by the threat as the moving cause
for its execution, is a contract made under duress and its maker may avoid it.

4.  Same. —See facts undisputed in the record showing the execution by an inno-
cent party of the contract sued upon, and which should not have been enforced.

5.  Practice—Judgment Against Evidence.—The testimony to the duress was
uncontradicted, although the plaintiff was on the stand as witness.   In such case judg-
ment for plaintiff is reversed as in conflict with the testimony.

APPEAL from Harris.  Tried below before Hon. James Masterson.
The opinion contains a statement.

*A. T. Patrick,* for appellants.— 1. The court below erred in not re-
ducing its conclusions of law and of fact to writing as requested by de-
fendants.   Sayles' Civ. Stats., art. 1333; Shuber v. Holcomb, 2 App.
C. C., sec. 224; Barnett v. Abernathy, 2 App. C. C., sec. 775; North v.
Lambert, 3 App. C. C., sec. 53.

The court should have continued the cause.   Rev. Stats., art. 1279.

2. The court blow erred in rendering judgment against the partner-
ship composed of the defendants O. R. and R. R. Morrison and against
the defendant R. R. Morrison, the proof clearly showing that the note
on which judgment was rendered was executed by O. R. Morrison, out
of the course of business of said partnership, and without authority or
ratification of the said R. R. Morrison.   Pars. on Partnership, 3 ed.,
pp. 200, 201, note b, and cases cited; 5 Field's Lawyers' Briefs, sec.
10; 2 Am. and Eng. Encyc. of Law, 356.

3. The court should have rendered judgment against the plaintiff in
favor of the defendants for the cancellation of said note, and for plain-
tiff against defendants for said land, the proof clearly showing that
there was no consideration for said note, and that the defendants did
not execute the same for the purpose of acquiring the title to said land,
but that said note was executed and delivered and the deed received
under duress caused by fear of illegal imprisonment induced by threats
of criminal prosecution made by the plaintiff A. Faulkner for the pur-
pose of securing said note.

The judgment shall conform to the pleadings and the case proved. Rev. Stats., art. 1335.

"Fear of illegal imprisonment constitutes duress." Landa v. Obert, 78 Texas, 33, and cases cited.

Whenever a conveyance or contract is obtained by duress equity will grant relief, defensively or affirmatively, by cancellation, injunction, or otherwise, as the circumstances may require. In determining what constitutes duress—what force or threats—equity follows the law. 2 Pom. Eq. Jur., sec. 950; Bish. Eq., 3 ed., sec. 230.

The mere threat to employ colorable legal authority to compel payment of an unfounded claim is such duress as will support an action to recover back what is paid under it. 6 Am. and Eng. Encyc. of Law, p. 70.

*O. T. Holt*, for appellee.—Duress by threats exists not when a party has entered into a contract under the influence, but only where such a threat excites a fear of some grievous wrong. The threat must be such as would excite bodily terror or fear in a man of ordinary courage and will power. The appellants will not be heard to say that they executed the note and received and accepted the deed under duress and took no action to repudiate the same, but on the contrary agreed to procure patent and ratified the whole transaction by asking an extension of time when the note became due, and time was extended, for which appellant thanked appellee. The threat must be such as will overcome a man of ordinary firmness. The mere apprehension that legal proceedings will be taken by improper manner is not sufficient. Harman v. Harman, 61 Me., 23; Town v. Ackerman, 46 Ind., 552; Town Council v. Burnett, 34 Ala., 400; Preston v. Boston, 12 Pick., 12; Adams v. Sturges, 78 Ind., 175; Tooke v. Sloan, 30 N. J., 394; Buchanan v. Sohlien, 9 Mo., 552; Alexander v. Pierce, 10 N. H., 498; Edd v. Herrin, 17 Me., 430; Diller v. Johnson, 37 Texas, 47; Wells v. Barnett, 7 Texas, 584; Knopp v. Hyde, 60 Barb., 80; Foss v. Hildreth, 10 Allen, 80; Bone v. Detrick, 52 Ill., 11; Helborn v. Buchanan, 7 Atlantic Rep., 272; Peckman v. Hudson, 76 Ind., 471.

STAYTON, CHIEF JUSTICE.—This action was instituted by appellee on a promissory note alleged to have been executed by appellants as partners on October 11, 1888, to secure the purchase money of a tract of land conveyed by him to them on which foreclosure of lien was sought.

Defendants by an answer, sworn to by one of them, alleged that the note was without consideration; that it was executed under duress caused by fear of a criminal prosecution threatened by Faulkner for an offense of which they were not guilty; that title to part of the land

for which it was executed had failed, and defendant R. R. Morrison alleged that the note was executed by O. R. Morrison without his authority, consent, or ratification, and that it was not executed for a partnership purpose.

The cause was tried by the court and a judgment rendered for the plaintiff.

· The uncontroverted evidence shows that M. C. Johnson was indebted to defendants, who were merchants doing business under the name of Morrison & Bro., in the sum of $800, and that to secure this he executed to them a deed for twelve hundred and eighty acres of land, which embraced the land subsequently conveyed by Faulkner to them. At the time the deed was executed Johnson furnished defendants with a statement from the Land Commissioner or from the surveyor of the county to the effect that the land would be patented to him. After defendants received the deed with consent of Johnson they gave a mortgage on the land to a person in Galveston, from whom they borrowed $1350, explaining to the lender how they held the property; in fact, the deed seems to have been made to them with the understanding that they should use it as a security, and it was intended as between the parties only as a mortgage.

About ten months after the mortgage was executed Johnson proposed, if defendants would reconvey to him, that he would pay to them the sum he owed them, and they did so. Prior to this last occurrence Johnson had seen Faulkner, who had agreed if Johnson would convey to him six hundred and forty acres of the land to take up Johnson's note to Morrison & Bro., which they had deposited in Galveston as collateral security with the mortgage on which they had borrowed money, and it was with a view to enable Johnson to carry out his agreement with Faulkner that Morrison & Bro. made the reconveyance. Neither of the Morrisons had any conversation with Faulkner nor in any manner participated in the transactions between Faulkner and Johnson, but they consummated their agreement, Faulkner paying the note of Johnson held by Morrison & Bro. and by them deposited as collateral security, the sum so paid going to the person from whom they had borrowed money, and Johnson conveyed to Faulkner the six hundred and forty acres of land by a deed with general warranty, and the deed made by Johnson to Morrison & Bro., as well as the reconveyance made to Johnson, contained like covenants as well as recitals that the land was patented, but both those deeds were prepared by Johnson or under his direction, and neither of the Morrisons in fact knew that they contained covenants of warranty or recitals that the land had been patented. After Johnson had conveyed to Faulkner the latter discovered that the land had not been patented, and it was subsequently ascertained that on account of conflicts with older surveys there was but little more than

five hundred acres that could be patented, and through the efforts of Faulkner a patent was obtained for that.

The evidence of Johnson and the Morrisons, taken by deposition, shows that after Faulkner ascertained that the land had not been patented and fell short of quantity conveyed, he made known to them that he intended to prosecute them criminally for swindling and also to institute civil action against them unless the matter was adjusted to his satisfaction, and that the Morrisons then, to avoid criminal proceedings against them which they believed Faulkner would institute, which would have been ruinous to their business as merchants as they were then situated, executed the note sued and received a deed for the land which was still stated to embrace six hundred and forty acres. This deed was a quit claim and was never recorded nor rights asserted under it, but was brought into court by the defendants, who asked that it be canceled, proposed to make any proper reconveyance, and prayed that the note sued on be canceled.

O. R. Morrison testified that he told Faulkner after the note sued on was executed that they would never pay it, but this Faulkner denied.

Faulkner testified as a witness in court, but did not deny that he had threatened to prosecute the Morrisons criminally as stated by them and Johnson, but he produced copies of letters and a telegram in which he only threatened a civil action if a settlement was not made. He also exhibited a letter written by O. R. Morrison after the date of the note sued on, in which the following language occurs: "We are under obligations to you for the way you have acted in this matter. If we had been forced to pay the note it would have put us in a tight place. We will not forget your kindness."

The evidence leaves but little doubt that from Johnson's language when the deed to Faulkner was delivered the latter understood that the land was patented.

The trial ended at 4 o'clock p. m. on the last day of the term, and on being requested to make out and file conclusions of fact and law the judge refused to do so, because the other business of the term which necessarily had to be transacted would consume his time until the hour for adjournment.

Complaint is made of this, but the judge refused for want of time, and it furnishes no just cause of complaint. Davis v. The State, 75 Texas, 434.

It is urged that the evidence was not sufficient to show that R. R. Morrison authorized the execution of the note or that O. R. Morrison had power as a partner to execute it, but we are of opinion that the evidence was sufficient to sustain a finding that R. R. Morrison consented to its execution as fully as did O. R. Morrison; and if its execution was not under duress it seems to us that it was so connected with

the partnership business as to authorize O. R. Morrison to execute it in the firm name.

From the facts shown it is evident that neither of the Morrisons did any act that would amount to a crime, and the most that can be said is that by receiving a deed reciting that the land was patented and in executing a deed with a like recital they may have influenced Faulkner to believe that this was true; but there is no reasonable ground shown to induce the belief that they had any intention in this respect to mislead Faulkner, who seems to have had no conversation with either of them until after Johnson had conveyed to him.

The evidence of Johnson and both of the Morrisons, uncontradicted by Faulkner, who had full opportunity to do so if their statements were not true, leaves no doubt that he threatened a criminal prosecution against them and that they believed he would carry out his threat, and that under the influence of the threat used for the purpose of coercion the note sued upon was executed.

The threat of criminal prosecution for swindling involved a threat to arrest and imprison, from which though guilty of no crime they believed they could not escape unless they executed the note sued upon or performed some other act which Faulkner had no right to require of them.

A contract made under a threat of unlawful imprisonment, the fear induced by the threat being the moving cause for its execution, is a contract made under duress and its maker may avoid it.

Plaintiff had threatened the prosecution and defendants were authorized to believe that he would carry it into execution; he had the means to put it in motion, and his telegram received just before he went to the town where they lived, in connection with former threats, was calculated to induce them to believe that he intended at once to do so if they did not accede to his demands.

If the testimony of defendants is to be believed there can be no doubt that they executed the note sued on under a well founded apprehension that if they did not the threats would be carried out, and that fear of this so operated upon their minds as to influence the act.

If there was conflicting evidence the judgment ought to be permitted to stand, but there is none on the question of duress and there is nothing in the evidence of the defendants or of Johnson to discredit their testimony. Plaintiff was on the stand, but did not controvert their statements, and under this state of facts we feel constrained to hold that a state of facts was shown which did not authorize a judgment in favor of the plaintiff.

For want of conclusions of fact and law we have been embarrassed in the disposition of this case, but we can see no ground on which the court below could have rendered a judgment in favor of the plaintiff other than that he may have come to the conclusion that the uncontra-

dicted facts did not show duress.    If this was the conclusion we are of
opinion that it was erroneous.

There was no pleading setting up ratification of the contract, nor evi-
dence tending to show such facts as would amount to a ratification.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 3, 1891.