CASE 35.—ACTION BY J. H. POYNTER AND OTHERS AGAINST ANDREW PHELPS AND OTHERS TO BE ADJUDGED THE RIGHT TO USE A CERTAIN BAPTIST CHURCH FOR DIVINE WORSHIP.—June 20.

## Poynter, &c., v. Phelps, &c.

Appeal from Pulaski Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for defendants. Plaintiffs appeal.—Reversed.

1. Religious Societies—Control of Property—Rights of Majority. —The majority of a congregation of a religious denomination having a congregational form of church government, without any judicatory with revisory powers, is ordinarily entitled to rule.

2. Same.—Where there is a division in a congregation of a religious denomination having a congregational form of church government, under which the congregation is independent and self-governing, the civil courts will as a general rule, and in the absence of any specific trust, give the property of the congregation to the majority of the members, without inquiring into whether there has been any change in the religious views of the congregation; but where there is a division of a congregation having a judicatory of final

revisory power, with the right to appeal thereto, the civil courts will give the property to those persons of the congregation, who are recognized by the highest ecclesiastical court as being the congregation, though they constitute a minority. ·

3. Same—"Division"—Rights of Factions.—Where a division arose in an independent self-governing congregation, and neither faction withdrew therefrom, but each claimed to be the majority, with the right to rule, there was a "division," within Ky. Stats. 1903, section 3222, providing that, in case a division shall take place in a society, the trustees shall permit each party to use the church for worship a part of the time, etc., and the faction excluded from the use of the property of the congregation was entitled to a judgment giving them the right to use such property on designated occasions; but the excluded faction was not entitled to recover possession of the old church record, but was entitled to a copy thereof, the cost of the making of which should be divided betwen the factions.

VIRGIL P. SMITH and O. H. WADDLE & SON for appellants.

JAMES DENTON, T. Z. MORROW and H. S. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

Appellants, claiming to be members of the Flat Lick Baptist Church, and three of them, viz., J. H. Poynter, W. R. Ping, and R. M. Testerman, to be trustees of the church, brought this suit in equity in the Pulaski circuit court against appellees, members of the same church, three of whom, Andrew Phelps, Perry James, and Arthur Hubbell, also claim to be trustees of the church, to obtain by judgment of the court the right to use the church building one Saturday and Sunday of each month for purposes of divine worship, and to recover of appellees a record book containing a list of the members of the church and the

minutes of meetings held by the church since its institution in 1779. The church in question is what is known as a Missionary Baptist church, and is situated in Pulaski county. The grounds set forth in the petition for the relief sought are in substance: (1) That on February 28, 1903, some of the appellees, at a meeting in which only 20 of the membership of 250 composing the congregation of the Flat Lick Baptist Church participated, by a vote therefor of 12 of the 20 mentioned, procured the adoption of certain resolutions that were and are inconsistent with and contrary to the faith, doctrine, and rules of government of the Flat Lick Baptist Church, and to which a majority of the members of that church were and are opposed. (2) That at that and subsequent church meetings appellants and such other members of the church as were opposed to and failed to comply with the resolutions in question were refused participation in the church proceedings and threatened with excommunication. (3) That the then pastor of the church, who was the moderator of its congregational meetings, together with appellees and others who had voted for or continued to favor the resolutions, arbitrarily refused to entertain a motion to rescind them. (4) That although at another and later meeting a majority of the congregation present, including the appellees, voted to rescind the resolutions, appellees did not act in good faith or in the interest of harmony in so voting, but persisted in their mistreatment of appellants and others of the congregation who had opposed the resolutions from the beginning, deprived them of their rights, and abridged their privileges as church members to such an extent that they were compelled to organize themselves into a distinct party of worshippers, though of the same faith and same church,

which appellants and those associated with them claimed to have accomplished without withdrawing from the Flat Lick Baptist Church. (5) That appellants and their associates, constituting, as alleged, a majority of the membership, by electing as trustees the three persons named in the petition as such, and claiming the possession of the church building and ground, are entitled to control the church property and affairs of the Flat Lick Baptist Church, and are equally with appellees entitled to the use of the church for purposes of worship, although appellees locked its doors against them and have since continued to bar them out.

The resolutions referred to are as follows: "Your committee respectfully submit the following resolutions for the government of the new enrollment of the membership of Flat Lick church, as recently ordered by said church: Resolved: (1) That said enrollment be on the new church record recently purchased by the church from the Baptist Book Concern, Louisville, Ky. (2) That the enrollment be begun at the next regular business meeting of the church, the fourth Sunday in March, 1903, and that it be continued at the regular business meeting the fourth Saturday in April of the same year, and that it be concluded at the following regular business meeting the fourth Saturday in May. (3) That at the close of the said period of time and thereafter Flat Lick church shall be constituted alone and consist only of such members as have complied with the conditions of these resolutions. (4) That all members who desire to enroll be required to subscribe to the articles of faith and the church covenant contained in said new record, and that a request to be enrolled shall be construed as embracing a solemn promise to comply with these

resolutions and others. (5) That all members who desire enrollment and who may be scriptural subjects of discipline shall be required to make suitable reparation and acknowledgment before they are permitted to do so. Any member may object to such a person enrolling at the time the request is made, and they will not be permitted to enroll until an investigation of the charge has been made by the church. This shall be done at as early date as practicable. (6) That any member who may fail to enroll within the proper period of time as fixed by these resolutions may do so any time thereafter by complying with the terms herein set forth. (7) That after the fourth Saturday in May, 1903, the old church book shall be regarded as a reference book only, and shall be retained by the church as a historical record of its past. (8) That the clerk of the church be directed to correspond with all members who may be absent from the county or State and notify them of this action, in order that they may take such steps as they may desire in the matter; the church to pay expenses of such correspondence. (9) That all members who wish to enroll be required to be present and make the request themselves, except such as are prevented from being present by sickness, absence from the county or State, or providential cause. Those who are thus prevented from being present may make the request in writing, or through a suitable proxy. (10) That each member enrolled shall give, according to his or her ability, financial aid to the expenses of the church. (11) That each member enrolled will abstain from the use of intoxicants as a beverage, and that they will not aid and abet the cause of intemperance by selling apples or grain for distilling purposes, nor labor for or at a distillery or similar institution, nor knowingly

cast their suffrage for any person for any office who uses intoxicants in above sense, or is a friend in any application of the word to this great evil. The use of intoxicants in cases of sickness when prescribed by a regular practicing physician of good character shall be permitted. (12) That a failure after enrollment to comply with the provisions of these resolutions and the said articles of faith and covenant shall constitute grounds for discipline and expulsion from the membership, after the necessary scriptural steps have been taken to reclaim the erring brother or sister. (13) That the pastor make public announcement of this act from the pulpit, and that the membership seek to notify all who are concerned as they may have opportunity. (14) That the pastor or clerk read and explain said articles of faith, church covenant, and resolutions before such enrollment, so that all may have full knowledge of the purpose and scope of same.''

Appellees filed a general demurrer to the petition, which the circuit court overruled, and to which ruling they excepted. They thereupon filed an answer, which traversed the averments of the petition, and in substance averred that appellees Andrew Phelps, Perry James, and Aruthur Hubbell, as trustees duly elected by the members of the Flat Lick Baptist Church, held the title to the church grounds and building for the use of the congregation; that they (appellees) and the members of the church associated with them, constitute a majority of the congregation, and by reason of that fact are entitled to control the church property and rule the church; that appellants and those associated with them have been and are disloyal to the church and are trying to disrupt and destroy it. All affirmative matter of the answer was

controverted by reply. On the hearing the circuit court dismissed the action; hence this appeal.

The record contains a great deal of testimony, much of which is conflicting. It will serve no good purpose to discuss it in detail, but it will be sufficient to say that it shows the existence among the members of the Flat Lick Baptist Church of a serious division. The faction represented by appellants being known as the "Old Book members," and that represented by appellees as the "New Book members." This division arose out of the adoption of the resolutions copied above and as to the conduct of the pastor. According to the evidence about half of the members, including appellees, headed by the pastor, favored the resolutions, and demanded that all the members of the church subscribe to them and obligate themselves to obey them, by re-enrolling their names in a new book or church record containing the resolutions, and discarding, except for purposes of reference, the old church book, containing the names of all the members and the record of all the meetings and proceedings of the church since its institution. On the other hand, the evidence also shows that practically an equal number, including appellants, opposed the resolutions, complained that they introduced innovations in the church, imposed unreasonable restrictions upon individual conduct and liberty of conscience, and were otherwise violative of the faith and doctrines of the Missionary Baptist Church and its rules of government, for which reasons, and because of the alleged arbitrary and harsh manner in which their adoption was attempted to be forced upon the congregation of the Flat Lick Baptist Church, appellants and those holding with them refused to be bound by the resolu-

tions or to enroll their names in the new church book containing them.

The dissatisfaction existing among the members of the Flat Lick Baptist Church on account of the resolutions and the manner of their adoption manifested itself in an attempt on the part of appellants, made at one of the church meetings, to rescind them; but it proved abortive, because the pastor, in his capacity of moderator, refused to entertain a motion to that effect. Incensed at this action of the pastor, backed as it appeared by the approval of appellees and other members following his leadership, appellants and others of their faction held a meeting at which action was taken declaratory of their rights as members of the Flat Lick Baptist Church. At the same time they elected the appellants, J. H. Poynter, W. R. Ping, and R. M. Testerman, trustees to hold the title of the church property, and attempted to confer upon them authority to that effect. They then elected a delegate, known as a "messenger," to represent the Flat Lick Baptist Church at the approaching meeting of the Cumberland Association of the Baptist Church, to which the Flat Lick Baptist Church belonged, and furnished him a letter to the association which purported to constitute his credentials as a messenger, convey the greeting of the Flat Lick Baptist Church to that body and recite the alleged wrongs sustained by appellants at the hands of appellees. The latter, likewise claiming to represent the Flat Lick Baptist Church, also elected a messenger to the same association, and by him forwarded the usual church letter to that body.

The Cumberland association ,being attended by the two messengers and required to determine which of them was entitled to represent the Flat Lick Baptist

Church in the association, decided the matter in
favor of appellants' messenger, who thereupon took
his seat in the association as such.  In view of this
decision, and the condition to which appellees had
brought the Flat Lick Baptist Church by the adoption
of the resolutions in question, they and others of their
faction at the June meeting, 1906, of the congregation
of the Flat Lick Baptist Church, by a majority vote
of the members present, rescinded the resolutions.
But the manner in which this action was taken did not
seem to manifest a motive or spirit calculated to
remove the dissatisfaction of the opposing faction, for
it did not, in rescinding the objectionable resolutions,
require their obliteration from the new book, or re-
mand the congregation to the use of the old book.  The
use of the new book seems to have been continued for
recording the proceedings of the church meetings and
for the enrollment of the names of members, with the
understanding, express or implied, that members
known to be opposed to the previous action in respect
to the adoption of the resolutions might or might not
enroll their names in the new book, at their option;
but they were not accorded the privilege of enrolling
them in the old book.  In the meantime, and before the
action last referred to was taken, appellants requested
of appellees, and especially Andrew Phelps, Perry
James, and Arthur Hubbell, who had been elected
trustees of the Flat Lick Baptist Church before any
division occurred in the congregation, that appellants
and their faction be allowed to occupy and use the
church building one Saturday and Sunday in each
month for purposes of worship.  A similar request
was made of the church janitor, but in each instance
the request was refused.

It is contended by appellees that the acts and pro-

ceedings of which appellants complained were legal
and necessary to rid the church, without publicity or
the scandal of trials, of a few members whose immoral
lives and practices had placed them beyond the reach
of the ordinary methods of church discipline, while
appellants insists that such action was illegal, un-
precedented, and revolutionary.   Thus the warring
factions have contended for two years, with increasing
bitterness and hostility, until what was at first a mere
breach that might, by judicious handling on the part
of the pastor and wiser heads of the church, have
readily been healed, has widened into an apparently
impassable chasm of dissension and division.   In the
meantime the cause which the Flat Lick Baptist
Church was designed to advance, viz., the propagation
of the Christian religion, has been, as in all such cases,
the chief sufferer.   It is deplorably true that church
dissensions are conspicuously bitter and violent.   In
such controversies the Christian spirit is too often
laid aside for that of mischief or spite; sight being lost
of the ultimate fact that it is the mission of the church
to prevent, and not cause, strife among men, and that
the individual church which would more nearly ap-
proach the divine conception of its mission and con-
stantly keep "its windows open toward Jerusalem"
must be founded upon the same brotherly love, though
it be of lesser measure, that moved the Savior to
sacrifice his life for the redemption of mankind.   It
would be profitless to speculate as to whether or by
what means the division in the Flat Lick Baptist
Church might have been averted or healed, or to de-
cide which of the two factions was in the right as to
the original grounds of controversy.   The fact remains
that the division exists, and that the contending fac-
tions are about equal in numerical strength and too

widely apart to be reconciled at this time by any advice that we may volunteer to give them. It is further apparent that the cause of the division was not removed by the action of appellees in merely rescinding the objectionable resolutions. Appellants contend that they should have been expunged, and the old church book restored to use for the enrollment of church members and recording of all proceedings of church meetings, and that members of the church whose conduct subjects them to church discipline should be tried and dealt with in due form and according to Baptist usage and precedent, instead of being coerced into withdrawing from the church by such a regulation as would require them to re-enroll their names as church members in a book containing resolutions, however proper, at which it was known they would revolt.

The differences affecting the Flat Lick Baptist Church are not precisely of faith or doctrine, nor such as grow out of interpretation of ecclesiastical law, but rather of church polity or government. The Baptist church does not, as a religious sect or denomination, possess a constitution or creed, like the Presbyterian, Methodist, and many other churches. Its form of church government is congregational, and therefore purely democratic. Each church is a distinct organization, independent of all others. There are no intermediate judicatories, or a judicatory of final revisory power, in Baptist government. . Consequently the right of appeal does not exist. Every Baptist church is, therefore, a law unto itself in matters ecclesiastical. While what are known as Baptist associations, both district and State, exist, they possess neither appellate jurisdiction nor revisory power, but may advise the churches, without in any way binding the latter to

accept such advice.  In the Baptist church the major-
ity of the congregation is ordinarily entitled to rule,
and it is but doing justice to the sect to say that the
majority rarely abuses its power.  To this fact and
the simplicity of its government much of the evan-
gelistic success of the Baptist church is manifestly
due.  The case presented by the record is that of a
church divided upon questions of local church govern-
ment; the opposing factions being of practically equal
numerical strength, and each faction so embittered
against the other as to make it impossible for them to
continue members of the same church organization,
yet each having some, if not an equal, right to the use
of the church building for worship.  Neither faction
has withdrawn from the church or been excommuni-
cated.  On the contrary, each claims to constitute a
majority of the congregation of the Flat Lick Bap-
tist Church, and the right to use the church property
for purposes of worship.  In view of the situation,
what should have been the judgment of the circuit
court?

With respect to church buildings and other property
of independent self-governing congregations—such as
the Baptist—which are controlled in the management
of a majority of voices, if there be no specific trust
involved, in case of controversy following a division
and complete separation of one part of the congrega-
tion from the other, the civil courts will as a general
rule give the property to the majority of the members,
without inquiry as to whether there has been any
change in the religious views of the congregation.  But
the rule with respect to the property of churches such
as the Presbyterian, Methodist, and some others, is
different; that is, the church building or other prop-
erty of a denominational church, like the Presbyte-

rian, Methodist, etc., in case of controversy or division, will be given by the civil courts to those persons or members of the congregation who are recognized by the highest ecclesiastical court or judicatory of the denomination as being the church or congregation, though they constitute but a minority of the congregation. Gibson v. Armstrong, 46 Ky. 481; Lamb v. Cain, 129 Ind. 486, 29 N. E. 13, 14 L. R. A. 529; Watson v. Jones, 13 Wall. (U. S.) 679, 20 L. Ed. 666; Trustees v. Harris, 73 Conn. 217, 47 Atl. 116, 50 L. R. A. 636; Nance v. Busby, 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801. In the case before us, however, neither faction having withdrawn from the Flat Lick church, each claiming to be in the majority and by reason thereof the right to rule, and there being no church judicatory of appellate jurisdiction to decide the controversy, we think the case simply manifests a schism or division, in the meaning of section 322, Ky. Stats., 1903, which provides: "In case a schism or division shall take place in a society, the trustees shall permit each party to use the church and appurtenances for divine worship a part of the time, proportioned to the members of each party. The excommunication of one party by the other shall not impair such right, except it be done bona fide, on the grounds of immorality."

Appellants, even if in the minority, are entitled under this statute to the relief asked in the prayer of the petition, viz., to the use of the Flat Lick Baptist church one Saturday and the succeeding Sunday in each month, and this the circuit court should have given them, being careful not to allot them the same Saturday and Sunday of each month now used by appellees for worship. The right here claimed by appellants has been conceded by this court in many similar cases, and in at least one instance, to the minority in

a case of division in a Baptist church, even holding that "the excommunication of one party by the other does not impair the right of the former to the use of the church and appurtenances for divine worship, unless the excommunication be on the ground of immorality. The mere refusal of a minority to obey the wishes of a majority, or to subscribe to every view the majority may express as to their religious convictions, does not amount to immorality; but to have that effect the conduct must be such as amounts to dishonesty, wickedness, or injustice, such action as contravenes the moral or divine law." Ransom v. Rogers, 6 Ky. Law Rep. 200; Brook v. Yadon, 14 Ky. Law Rep. 863. The case of Igleheart v. Rowe, 47 S. W. 575, 20 Ky. Law Rep. 821, relied on by appellees, is not in conflict with the view here expressed. In that case only six or eight persons, who had been excluded from membership on charges of immorality, were claiming a right to the use of the church under section 322, Ky. Stats., 1903. The court, therefore, very properly held that this did not constitute a schism or division in the meaning of the statute, for which reason the action brought by the minority was dismissed.

Appellants are not, however, entitled to recover possession of the old book or church record claimed in the petition, but are entitled to a copy thereof, the cost of making which should be divided between them and appellees. Brook v. Yadon, 14 Ky. Law Rep. 863. It is not too late for the opposing factions of this congregation to agree upon some just basis for a settlement of the dispute out of which this controversy has grown. That the controversy may soon so result is "a consummation devoutly to be wished."

For the reasons indicated, the judgment is reversed, and cause remanded, with directions to set aside the

judgment and enter in lieu thereof another in conformity to the opinion.