[redacted]

## TRADERS & GENERAL INS. CO. v. RUSSELL.

No. 13439.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 30, 1936.

Rehearing Denied Dec. 18, 1936.

[redacted]

Ramey, Calhoun & Marsh, of Tyler, Wynne & Wynne, of Wills Point, and Lightfoot & Robertson, of Fort Worth, for appellant.

Caldwell, Gillen, Francis & Gallagher, of Dallas, and A. A. Dawson, of Canton, for appellee.

DUNKLIN, Chief Justice.

T. E. Mercer was engaged in the general trucking, teaming, and contracting business, using various truck drivers, and driving trucks of various sizes and makes for the transportation of oil field equipments, materials, and other wares for hire through Van Zandt county and other parts of East Texas.

In order to carry on that business, Mercer hired a large number of workmen and carried insurance under the Workmen's Compensation Law (Vernon's Ann.Civ.St. art. 8309 et seq.), with the Traders & General Insurance Company, a corporation duly incorporated under the laws of the state of Texas. William Scott Russell, usually called Bill Russell, was hired as one of his employees to drive a truck.

Between the hours of 2 and 3 o'clock of the afternoon of October 7, 1933, Russell left Fort Worth in a Chevrolet truck to go to Longview, Tex., by way of Dallas, Wills Point, Canton, Ben Wheeler, and Tyler, making the trip as a part of the duties of his employment. There was a cab on the truck in which the driver rode and it also had a bed for hauling gravel, which was empty. At about 7:30 in the afternoon of the same day the truck turned over on a curve about four miles east of Ben Wheeler and about 60 miles west of Gladewater, killing both Bill Russell and a companion riding with him at the time. The man riding with Russell, and whose name was not disclosed, is designated by witnesses as the older man and Russell as the young man.

Two separate suits were instituted to recover compensation insurance under the Workmen's Compensation Law. One of those suits was by Mrs. Odessa Russell, surviving wife of Bill Russell, and the other by J. M. Russell and wife, May Russell, the parents of Bill Russell. By order of the court, the two suits were consolidated and tried at the same time. A general de-

murrer was sustained to the suit by the parents, which was then dismissed and no appeal was prosecuted from that disposition of their case.

The other suit by Odessa Russell was tried before a jury and judgment was rendered in her favor against the insurance company for a lump sum settlement of $4,785.83, from which the insurance company has appealed.

In subsequent portions of this opinion, Mrs. Odessa Russell is the only plaintiff referred to.

■ By article 8309, Rev.Civ.Statutes, it is provided that the injury for which compensation may be allowed to an employee shall not include "an injury received while in a state of intoxication," and the burden was on the plaintiff in this case to show that the deceased was not in a state of intoxication at the time of his death. The jury found in plaintiff's favor on that issue.

Whether or not Russell was in a state of intoxication at the time of his death was the principally controverted issue on the trial.

The proof showed that the truck Russell was driving was identical with the one described in the testimony of all the witnesses.

Highway 67, on which Russell was traveling, crosses Highway 19 at the town of Ben Wheeler. Two filling stations were at the crossing, both on the right-hand side going east on Highway 67. The filling station on the west side of the crossing was known as "Sides Filling Station," and the one on the east side was known as "Ardis Johnson Filling Station."

The evidence chiefly relied upon by the plaintiff to show that Bill Russell was not intoxicated at the time of the accident consisted of testimony of witnesses to his general habits of sobriety; some of whom testified to a close acquaintance with him for a considerable length of time before the accident and that they had never known him to take a drink of intoxicating liquor; also testimony of his wife that he was sober at the time he left Fort Worth, about 2:30 o'clock of the afternoon of the day of his death; also testimony of different witnesses who worked with the body of the deceased after his death, including the embalmer, that they detected no odor of liquor on his person, and saw no bottle of liquor near where his body was found.

T. B. Bell, witness for defendant, testified that, while hitchhiking from West Texas to his home at Old London, he caught a ride in the truck in question from a point a short distance east of Wills Point; rode in the cab for awhile with the young man and his elderly companion, but moved back into the empty gravel bed and later got out and caught another ride because, from the manner in which the young man was driving, witness feared a wreck; that, when he got in the truck, the elderly man, who was pretty drunk, offered him a drink of whisky from a pint bottle about two-thirds full and witness drank therefrom.

The proof further showed that Weldon Duncan, Kenneth Coursey, Howard Goode, Lee King, and Ardis Johnson were at the Johnson filling station when the truck stopped there for about ten minutes, after it had veered to the right side of the road, narrowly missed striking Kenneth Coursey and Howard Goode, who were standing at the Sides filling station, and then skidded across the intersection and stopped at the Johnson filling station.

According to the testimony of some of those witnesses, Russell staggered from the truck into Johnson's filling station and, when he re-entered the truck, he fell against the elderly man who was riding with him in the cab. Some of those witnesses gave it as their opinion that Russell was drunk; that when he went into Johnson's station he offered to pay for a drink of water which Johnson had given him; that he inquired where he could purchase beer, and said that his name was Bill Russell; that he was making a trip from Fort Worth to Gladewater and had to be there by 7 o'clock that evening.

■■ Several assignments of error are presented here to the exclusion of certain testimony offered by the defendant as to certain conversations between some of the witnesses and Russell while he was at the Johnson station. The court ruled that the statements made by Russell in those conversations were admissible, but that what was said by the witnesses to him were not admissible.

The defendant offered the testimony of the witness Lee King, who said to Bill Russell just before the latter left the Johnson station: "Kid, you ought to drive this truck out on the highway and park it until you are sober enough to drive," to which Russell replied, "I have got to get to

Gladewater and am two and a half hours late;" that Russell then inquired of the witness how far it was to Gladewater and the witness replied that it was over 60 miles, whereupon Russell stated that he would be in Gladewater in an hour or two, and the witness told him that he was drunk and in no condition to drive the truck and that he would be "in hell" in less than 30 minutes if he did not sober up before going further.

The court excluded the testimony as to what King said to Russell, and also the testimony of Weldon Duncan, Kenneth Coursey, and Howard Goode that they heard the conversation between Lee King and Russell, and that it was substantially to the same effect as the proffered testimony of the witness King.

Defendant offered further testimony of Kenneth Coursey that he heard Ardis Johnson tell Russell that he was in no condition to be out on the highway and advised him to stay around the filling station until he could sober up, which was likewise excluded by the court on plaintiff's objection thereto.

All of the proffered testimony of those witnesses was excluded by the court on objection that it was hearsay.

The statements so made by the witnesses to Russell naturally called for some reply by him, and there is nothing to suggest that he was deprived of an opportunity to make reply.

In 17 Tex.Jur. § 235, p. 568, this statement is made:

"A person's silence where he is at liberty to speak, and the circumstances naturally call upon him to do so, may be considered as a tacit admission of statements made to him or in his presence, so as to make such statements admissible against him." Numerous decisions are cited in the footnotes supporting that announcement.

And a like statement of the same rule is made in many decisions cited in 22 C.J. § 356, p. 321. We therefore hold that the court erred in sustaining the objection to the testimony above quoted.

■ Appellee insists that the error, if any, in those rulings was harmless, because, as insisted, that testimony was merely cumulative of other testimony that was introduced without objection, such as the testimony of Howard Goode, that Russell staggered while going into and coming out of the filling station, and, when he got into the cab of the truck, he fell against the old man who was in there; testimony of Lee King that Russell said to him he had to be in Gladewater by 7 o'clock, and that Russell staggered as he came out of the filling station; testimony of Ardis Johnson and Kenneth Coursey that Russell asked Johnson for a drink of water and offered to pay for it, and also inquired of Johnson if he could find any beer there; testimony of Ardis Johnson that he told Russell that he must have been drinking something stronger than beer and that he should not drive while in that condition, and in his opinion Russell was decidedly drunk; testimony of Weldon Duncan that he heard Lee King tell Russell to sober up.

In support of appellee's contention, several decisions are cited, such as Davey v. Coleman (Tex.Civ.App.) 6 S.W.(2d) 227; Missouri, K. & T. Ry. Co. v. Robertson (Tex.Civ.App.) 200 S.W. 1120; Sanitary Mfg. Co. v. Gamer (Tex.Civ.App.) 201 S.W. 1068; Maryland Motor Car Ins. Co. v. Smith (Tex.Civ.App.) 254 S.W. 526; Golden Rod Mills v. Green (Tex.Civ.App.) 230 S.W. 1089; Bobbitt v. Bobbitt (Tex. Civ.App.) 223 S.W. 478; West Lumber Co. v. Henderson (Tex.Civ.App.) 238 S.W. 710, and other decisions. Also 41 Tex.Jur. p. 872, in which it is stated that the court has inherent and discretionary power to determine when evidence purely cumulative shall cease, and its action in refusing to admit additional evidence which is merely cumulative is not ground for reversal unless an abuse of discretion is shown.

In most of the decisions cited it was stated that the testimony excluded was but a repetition of what the same witnesses had already given, and in others, that the same testimony had been given by other witnesses without objection and involved general reputation for good character.

We do not believe those decisions are controlling here. To the contrary, we do not believe it can be said that the testimony excluded in this case could be classed as only cumulative, and therefore, its exclusion is harmless.

We quote the following from 41 Tex. Jur. § 17, p. 871: "A party has a right to offer and introduce all competent evidence relevant to the issues to be proved or disproved, even though other evidence may tend to do so, or to introduce evidence probative of different facts leading to a common result or inference."

We quote the following from the opinion of Chief Justice Stayton in Galveston, H. & S. A. Ry. Co. v. Matula, 79 Tex. 577, 15 S.W. 573, 574:

"There must exist in every court the power to determine when evidence purely cumulative shall cease, or there would be no limit to trials; and the exercise of such a discretion would be no ground for reversal of a judgment, unless it was made to appear that this had been abused.

"Such a power is one, however, to be exercised with the utmost care; and in a case in which there was but little or no controversy as to a given fact, such evidence might properly be cut off at a point where it would be improper to do so when the evidence was greatly conflicting.

"In a case in which a fact to be established is not sworn to directly by witnesses, but must be established by proof of other facts from which the main fact is to be inferred, then evidence of different facts from which the inference may be drawn is not strictly cumulative."

Also the following from 26 R.C.L. § 37, p. 1033:

"So long as facts testified to by a party are not conclusively established, or admitted, they are open to further proof and it is error to exclude evidence on the ground that it is cumulative. Where evidence is excluded on this ground the court should not submit the issue of fact to the jury. It may be said to be the general rule that the trial court may, in its discretion, limit the number of witnesses who may be called to prove a particular link in the chain of evidence, and this is especially true as to expert witnesses, or impeaching witnesses, except where character is the main fact in issue. It would seem, however, that the number should not be limited as to the main fact in issue, where the witnesses are not experts, as in the case of eye-witnesses to an accident, even though a statute limits the number of witnesses whose costs may be taxed, nor should the limitation be so arbitrary and unreasonable as to work injustice, and in any case the court should give notice in advance of its intention to limit the number of witnesses so that a party may determine which witnesses he will call."

In this connection it is to be noted that the testimony in question was not excluded on the ground that it was merely cumulative to other testimony that was admitted without objection.

In submitting special issues to the jury the trial court gave this definition:

"By the term 'State of Intoxication' is meant:

" 'That a person is under the influence of intoxicating liquor to such an extent as to deprive him of normal control of his bodily or mental faculties.' "

That definition was not challenged by counsel for either party.

Issue No. 4, submitted to the jury, reads: "Do you find from a preponderance of the evidence that at the time he sustained such injury, if any, the said Bill Russell was not in a state of intoxication?"

■ A bill of exception in the record here shows that in his opening argument one of plaintiff's counsel said:

"Now, did Ardis Johnson ever see him drunk in there? No. 4: 'Do you find from a preponderance of the evidence that at the time he sustained such injuries, if any, the said Bill Russell was not in a state of intoxication?' There are varying degrees of intoxication. As used in that definition— somebody once said, 'Drunk is he who is on the floor, and cannot rise to drink some more.' That is one extent. Another extent is that you can just drink a cup of coffee or Coca-Cola and just know the feelings of it. There is your limits."

Counsel for defendant did not object to that argument at the time it was made, but complaint was made of it in defendant's motion for new trial, and it is assigned as reversible error. Manifestly, the argument was improper, and in view of the testimony introduced tending so strongly to show that Russell was intoxicated when he was killed, its prejudicial effect as against the defendant must be presumed; and it was so violative of the established rules of procedure that defendant did not waive the right to complain of it by failure to object to it at the time it was made. Bell v. Blackwell (Tex.Com.App.) 283 S.W. 765; Hubb Diggs Co. v. Bell, 116 Tex. 427, 429, 293 S.W. 808; Willis & Bro. v. McNeill, 57 Tex. 465; 41 Tex.Jur. § 85, p. 814, § 87, p. 820, § 88, p. 822, § 93, p. 832.

Accordingly, the assignment addressed to that argument is sustained.

We deem it unnecessary to determine the merits of further assignments complaining of other statements by plaintiff's counsel in his argument to the jury, which were complained of for the first time in defendant's motion for new trial, but which, if ob-

jectionable, were not so much so as the above, and the right to complain now may have been waived by failure to. object to them when made.

We also sustain assignments of error to admission of the testimony of the witness B. E. Evans and the plaintiff Mrs. Odessa Russell of a long acquaintance with Bill Russell and that they had never known him to take a drink of intoxicating liquor and that he was not a drinking man. By article 802 of our Penal Code, the driving of a motorcar on the highway while the driver is intoxicated is made a penal offense, punishable by imprisonment in the penitentiary or by fine, or imprisonment in the county jail, but such an offense does not involve moral turpitude, and therefore the testimony introduced by the defendant that Russell was drunk about the time he was killed did not constitute a charge that he was guilty of a "crime involving moral turpitude;" nor did it put in issue his character for truth and veracity or honesty and fair dealing. Such is the test announced in Grant v. Pendley, 39 S.W.(2d) 596, 78 A.L.R. 638, in opinion by the Commission of Appeals after full review of the authorities, which was expressly approved by our Supreme Court and later expressly followed by our Supreme Court in Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.(2d) 1005.

In the Standard Dictionary (20th Century Edition) "Turpitude" is defined as "inherent baseness and vileness of principle, nature or conduct; depravity; also an action showing gross depravity."

In Re Henry, 15 Idaho, 755, 99 P. 1054, 1055, 21 L.R.A.(N.S.) 207, the following is said:

"The following general definition has been given by a great many authorities and seems to be approved by all that have considered the question: 'Moral turpitude is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' " Followed by citation of many authorities.

Prior decisions of some of our appellate courts cited by appellee, apparently to the contrary of the decision in the Pendley Case, supra, will, therefore, not be discussed.

For the errors noted, the judgment of the trial court is reversed and the cause remanded.