397 P.2d 475

**In the Matter of Charles N. MORRIS, Attorney at Law.**

**No. 7568.**

Supreme Court of New Mexico.

Oct. 26, 1964.

Rehearing Denied Jan. 6, 1965.

C. M. Neal, Hobbs, Lon P. Watkins, Carlsbad, for respondent.

Earl E. Hartley, Atty. Gen., Thomas A. Donnelly, Asst. Atty. Gen., Santa Fe, for relator.

Robert S. Skinner, Raton, amicus curiae.

PER CURIAM.

Disciplinary proceedings against respondent, Charles N. Morris, were instituted by the committee on ethics, grievance and discipline of the state bar association because, as charged therein, respondent had been "convicted of the felony of involuntary manslaughter in violation of Section 40–24–7, 1953 N.M.S.A., in the District Court of Dona Ana County, New Mexico, in Criminal Cause 11,060 on the Docket of said court." After notice and hearing, as provided in our rules for disciplinary proceedings, § 21–2–1(3) (3) (Part 1), N.M.S.A.1953, the board of bar commissioners made findings of fact and conclusions with a recommendation that respondent be sus-

pended from the practice of law for an indefinite period. The matter was then docketed in this court, exceptions to the report filed by respondent, the record certified by the commissioners, briefs filed, oral argument presented, and is now ripe for decision.

Although 15 exceptions were taken by respondent to the report of the bar commission, these are consolidated into 8 points relied on for reversal and further grouped into 4 headings for argument.

The rule making power in connection with admitting and disciplining attorneys, inherent in this court, was recognized by our legislature when by Ch. 96, N.M.S.L. 1941 (§ 18–1–1, N.M.S.A.1953) it was stated that the Supreme Court should "by rules promulgated from time to time define and regulate the practice of law within the State of New Mexico. * * *"

In August, 1960, effective November 1, 1960, this court promulgated the rules for disciplinary proceedings now in force and applicable in this proceeding. We quote from the preamble:

"The purpose of discipline of lawyers is the protection of the public, the profession, and the administration of justice, and not the punishment of the person disciplined.

"Only persons of integrity and good character should be permitted to practice law.

"Persons admitted to practice law in this state are a part of the judicial system of the state and officers of its courts.

"A license to practice law confers no vested right, but is a conditional privilege, revocable for cause.

"This court has the inherent power and the duty to prescribe the qualifications that shall be required for admission to practice law; to admit persons to practice law; to prescribe standards of conduct for lawyers; to determine what constitutes grounds for the discipline of lawyers; to discipline, for cause, persons admitted to practice law in this state; and to revoke the license of every lawyer whose unfitness to practice law has been duly established. * * *"

We also quote the following pertinent portions of the rules:

"2.01 All of the members of the bar have taken an oath to support the Constitution and the laws of this state and of the United States. As officers of the court, they are charged with obedience to these laws, both in and out of court, and to observe the high standards of professional conduct. Traditionally, standards for lawyers have been higher than expected of laymen. A license to practice law is a proclamation by this court that the

holder is one to whom the public may entrust professional matters. The lawyers must be true to that trust and his confidential relationship to his client, whether such client be a public body or a private individual.

"2.02 The court does not undertake by these rules to promulgate a code governing all causes for discipline. The enumeration here of certain categories of misconduct as constituting grounds for discipline shall not be deemed to be all-inclusive, nor shall the failure to specify any particular act of misconduct be construed as tolerance thereof by this court.

"2.03 The fact that certain acts of unprofessional conduct may at times have remained unchallenged shall not excuse a wrongdoer.

"2.04 *The commission of any act contrary to honesty, justice or good morals*, whether the act is committed in the course of his relations as an attorney or otherwise, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline. If the act constitutes a felony or misdemeanor, conviction thereof in a criminal proceeding is not a condition precedent to discipline. * * * (Emphasis supplied)

"2.05 The fact that an act is *malum prohibitum* rather than *malum in se* shall not, in and of itself, constitute a defense to a charge of misconduct.

"2.06 * * * *Conviction of a crime involving moral turpitude shall be conclusive proof of the guilt of the respondent*, (emphasis supplied) and a plea of guilty or a plea of *nolo contendere*, where followed by a judgment of conviction, shall be deemed to be a conviction within the meaning of this rule."

The issues presented for our determination may be summarized as follows: Is disciplinary action under the above quoted rules indicated when a member of the bar is guilty of the crime of involuntary manslaughter resulting from driving a motor vehicle while under the influence of intoxicating liquor? Stated otherwise, is the offense an act "contrary to honesty, justice or good morals"? In addition, is the offense one involving moral turpitude so that conviction thereof is conclusive proof of guilt of a character requiring disbarring or suspending from the practice?

Respondent's argument is that driving while under the influence of intoxicating liquor is a misdemeanor and a petty offense with a maximum penalty of 90 days in jail and $200.00 fine (Hamilton v. Walker, 65 N.M. 470, 340 P.2d 407) and this being true, the untoward or unintended result of such an act—in this instance the death of five people—would not alter the nature of the

act. We are unable to agree with the argument. Respondent has pleaded guilty to involuntary manslaughter which was defined in § 40–24–7, N.M.S.A.1953, as the "* * * unlawful killing of a human being without malice" and in the instant case arose out of the "commission of an unlawful act not amounting to a felony." § 40–24–10, N.M.S.A.1953, provided punishment upon conviction of "imprisonment in the state penitentiary for a period of not less than one [1] year nor more than ten [10] years." The fault with this argument was pointed up in Hamilton v. Walker, supra, wherein two Supreme Court cases were discussed: District of Columbia v. Colts, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177, and District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843. Both cases involved violations of city ordinances but, whereas in the Colts case the offense charged and the penalty provided for did not make the offense a petty one which could be tried without a jury, in the Clawans case these elements differed so the violation was in the petty offense class. Similarly, here, whereas the first offense of driving while under the influence of intoxicating liquor when considered with the penalty provided was held by us to be a petty offense, it does not follow that the offense of involuntary manslaughter, which requires a much greater penalty, is likewise a petty offense. Under our law it is clearly a felony.

While not prepared to declare that in every case where a felony has been committed by a member of the bar disciplinary action is justified or required, as contended by the board of bar commissioners, we must concede that we have difficulty in imagining what kind of a felony could be considered as not being "contrary to honesty, justice or good morals." As stated in § 2.01, quoted above, as members of the bar, lawyers are charged with obedience to the laws they are sworn to uphold. Further, as stated in § 2.02, supra, the rules do not purport to be all-inclusive as to causes for discipline. It is quite apparent to us that § 2.04 recites the basis upon which discipline is required, viz., "any act contrary to honesty, justice or good morals." That the act may or may not be a misdemeanor or a felony, is purely coincidental. Similarly, moral turpitude is not a consideration. If a member of the bar commits a crime involving moral turpitude, this fact is conclusive against him and discipline is required. (§ 2.06) However, whether the misconduct with which a person is charged is a crime involving moral turpitude or, if a crime, whether it is malum prohibitum or malum in se (§ 2.05); or, for that matter, if the act is neither a felony or misdemeanor, is not the issue. The true question is: Was the act to which respondent pleaded guilty "contrary to honesty, justice or good morals"?

Viewing the situation before us, we are forced to the conclusion that the conduct of respondent constituted a serious breach by him of his oath to obey the laws, and the commission of the offense constituted conduct contrary to justice and good morals and accordingly supports the findings, conclusions and recommendations of the board of bar commisioners. We attach no significance to the fact that at the time of the commission of the act to which respondent pleaded guilty he was serving as an assistant district attorney.

We have given serious consideration to the case of Baker v. Miller, 236 Ind. 20, 138 N.E.2d 145, 59 A.L.R.2d 1393, relied on and quoted from at length by respondent. As stated above, we do not consider moral turpitude a necessary element to support discipline, or, that it may be synonymous with "conduct contrary to honesty, justice or good morals." In re Jacoby, 74 Ohio App. 147, 57 N.E.2d 932. The Baker v. Miller case, supra, discusses this subject with particular reference to violation of our federal income tax statutes, and concludes that the charge filed in the disbarment proceeding did not include any allegation nor did the proof support a finding of moral turpitude so as to require disbarment. The conclusion of the court was that the charge did justify disciplining of the attorney and he was temporarily suspended from the practice. We do not see where respondent can find much comfort therein.

It is not unlikely that the New Mexico board of bar commissioners, in the instant case, had the holding in Baker v. Miller, supra, in mind when they recommended indefinite suspension, rather than the more severe penalty of disbarment. Under § 3.01 of our rules,

"Discipline shall be: (a) permanent disbarment, or (b) suspension for an indefinite period, subject only to termination as hereinafter provided, or, (c) censure, or (d) such other action by the court as it deems proper. * * *"

The cases cited in the note following Baker v. Miller, supra, starting at 59 A.L.R.2d 1398, disclose a great variety of approaches to the problem of what is and what is not "moral turpitude" in connection with income tax law violations by lawyers. The situation, as we view it, is not materially different when a member of the bar has been convicted of a felony. However, as already pointed out, we do not consider that allegation or proof of moral turpitude is required by our rules to support the bar commissioner's recommendations. We must consider only the question of whether the plea of guilty of respondent to a crime of involuntary manslaughter, resulting from driving while under the influence of intoxicating liquor, a felony charge, supports the recommendation of suspension. This we have done and conclude that it does.

■ We have considered respondent's additional arguments to the effect that suspension of his license under the circumstances here present violates rights guaranteed him under the fifth and fourteenth amendments to the Constitution of the United States and under Art. II, Sec. 18, of the New Mexico Constitution. We find no merit in these points. Neither do we consider that anything stated above in any way conflicts with the holdings in Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796, 64 A.L.R.2d 288, nor in Barsky v. Board of Regents of the University of the State of New York, 347 U.S. 442, 74 S.Ct. 650, 98 L.Ed. 829, relied on by respondent. See note commencing 98 L.Ed. 851, where due process in revoking professional licenses is discussed.

The respondent is suspended from the practice of law for an indefinite period. He may apply for termination of suspension after passage of one year from the effective date of this order, or upon completion of any sentence meted out to him in the cause in which he has pleaded guilty, whichever is later, or upon being restored to all civil rights.

It is so ordered.

NOBLE, Justice (dissenting).

I am unable to agree either with the result reached by the majority, or the reasoning upon which it rests.

This action is based upon Supreme Court Rule 3–2.204, providing that the commission of "any act contrary to honesty, justice or good morals" constitutes cause for disciplinary action. The decision turns upon the conclusion of the majority that the unintentional killing of a human being in the commission of an unlawful act, not amounting to a felony, is contrary to "honesty, justice and good morals," as those words are used in the rule.

We turn first to the definition of the words themselves. Actually, the three words, as used in the rule, have an almost identical meaning, and, as I shall hereafter show, are used synonymously with the term "moral turpitude." Roget's Thesaurus, § 939.7 defines "honesty" as synonymous with "integrity" or "adhering to principles." Used as an adjective, it means upright; honorable; reputable, estimable, worthy, creditable.

"Justice," as used in the rule, means "The principle of rectitude and just dealing of men with each other; also, conformity with it; integrity; rectitude; one of the cardinal virtues." Webster's International Dictionary; Lamborn & Co. v. United States, 65 F.Supp. 569, 576, 106 Ct.Cl. 703. "Immorality," of course, is the opposite of "good morals." Webster defines immorality as "the quality or state of being immoral: vice, wickedness; esp: unchastity;" also, "an immoral act or practice." Bouvier de-

fines "immorality" to be "that which is contrary to bonos mores;" and Ballentine says:

"To constitute immorality, a person's conduct must be such as to amount to dishonesty, wickedness, injustice,—such action as contravenes the moral or divine law."

See Poynter v. Phelps, 129 Ky. 381, 111 S.W. 699, 24 L.R.A.,N.S., 729, 735. A reading of the rule indicates that the phrase "honesty, justice and good morals" was intended to be given the above meaning.

The charge to which Morris pled guilty was the unintentional killing of a person while he was in the commission of an unlawful act, not amounting to a felony (driving while under the influence of intoxicating liquor). Black's Law Dictionary, 4th Ed., defines "moral turpitude" as "conduct contrary to justice, honesty, modesty or good morals." See, also, Marsh v. State Bar of California, 210 Cal. 303, 291 P. 583, 584. In In re Humphrey, 174 Cal. 290, 295, 163 P. 60, 62, it was said:

"Moral turpitude is misconduct by an attorney in reference to his duties and obligations as such attorney—conduct, in fact, which is contrary to justice, honesty, modesty or good morals."

It is apparent from the very definition of the terms that, as used in the rule, "honesty, justice and good morals" and "moral turpitude" are synonymous. We have held that driving while under the influence of intoxicating liquor is a petty offense, and one charged therewith is not entitled to a jury trial. Hamilton v. Walker, 65 N.M. 470, 340 P.2d 407. The offense of driving while under the influence of intoxicating liquor is not one involving "moral turpitude," and by the very definition of the terms, is not, in and of itself, one contrary to "honesty, justice and good morals." State v. Deer, Ohio Com.Pl., 129 N.E.2d 667; In re Jacoby, 74 Ohio App. 147, 57 N.E.2d 932. See, also, Traders & General Insurance Co. v. Russell, Tex.Civ.App., 99 S.W.2d 1079; Groves v. State, 175 Ga. 37, 164 S.E. 822; Ruedas v. State, 143 Tex. Crim.Rep. 291, 158 S.W.2d 500; Flowers v. Benton County Beer Board, 202 Tenn. 56, 302 S.W.2d 335. The majority appear to agree that this is so, but seek to distinguish between the petty offense which resulted in the unintentional killing of a person and the more serious crime which unintentionally resulted from such petty offense. They say this is true even though the death was the unintentional result of the petty offense which, in and of itself, is not contrary to "honesty, justice and good morals." Thus, the result—not the cause—is the determining factor as they view it.

Neither the question of "honesty, justice and good morals" or of the "moral turpitude" that may be involved in the commission of a criminal offense exists merely

because a crime has been committed—a mere violation of the law—on the theory that it is immoral to violate the law. The use of the term "honesty, justice and good morals," in our rule, clearly contemplates something more than mere conviction of a crime; otherwise, the use of the words would be surplusage of language. If a crime is one contrary to "honesty, justice and good morals," it is because the act denounced by statute offends the generally-accepted moral code of mankind. Indeed, the very language of Rule 3–2.206 itself supports the above view. It is only where the offense is one involving "moral turpitude" that mere conviction is sufficient, in and of itself, to warrant disciplinary action.

It logically follows from the majority decision that if the conviction of involuntary manslaughter resulting from the commission of a petty misdemeanor, which itself is not an act contrary to "honesty, justice and good morals," is sufficient to revoke the license of an attorney, then by the same reasoning, every road law violation by a lawyer which unintentionally results in the death of a person would likewise require such revocation. Some examples of analogous situations are the crossing of a yellow line, driving in excess of the posted speed limit, or any other violation of the laws of the road which, in and of themselves, are petty offenses not contrary to "honesty, justice and good morals." Under the reasoning of the majority, however, the violation of any such road law, if the death of another inadvertently resulted therefrom, would become contrary to and offend the generally-accepted code of mankind.

I think it is a generally-accepted medical fact that certain persons lack what is known as depth perception so as to be unable to distinguish the distance to another car traveling in the same direction. Yet, under the majority holding in this case, a lawyer who drove 65 m. p. h. in a posted 60-mile zone and who struck the rear of another car, with resulting death to an occupant thereof, would be just as guilty of involuntary manslaughter as was Morris in this case. Yet, I doubt whether anyone would be willing to revoke a license to practice law because of such an unfortunate result of a petty offense not in itself contrary to "honesty, justice and good morals." I am unable to see, and the majority have not pointed out, in what respect the unfortunate, unintended result of such petty offense raises it to the level of being contrary to "honesty, justice and good morals."

The majority say that disciplinary action is neither required nor justified in every case where a felony has been committed by a member of the bar. Yet, unless it can be said that the facts which gave rise to the involuntary death in one case are clearly contrary to "honesty, justice and good morals," but are not so contrary in the

other, there would be in fact no basis for distinction nor for the imposition of disciplinary action in one and not in the other.

Furthermore, all of the provisions of the disciplinary rules must be interpreted in the light of the expressed purpose, i. e.:

"The purpose of discipline of lawyers is the protection of the public, the profession, and the administration of justice, and not the punishment of the person disciplined.

"Only persons of integrity and good character should be permitted to practice law."

Even though Rule 3–2.204 provides that the action need not be committed in the course of his relations as an attorney, it nevertheless requires it to be contrary to "honesty, justice and good morals" which I have pointed out, by definition, is synonymous with "moral turpitude." An excellent definition of such purpose is found in In re Reily, 75 Okl. 192, 183 P. 728, 730, 7 A.L.R. 89, which was reaffirmed in Warkentin v. Kleinwachter, 166 Okl. 218, 27 P.2d 160, where it was said:

"The law does not demand that every technical infraction of the law by an attorney shall require his disbarment, although an attorney should endeavor to observe literally the law; but it is those infractions of duty by an attorney that involve moral turpitude and evince a depraved character, rendering such attorney untrustworthy and a reflection upon the bar and the court, as an officer thereof, that demand his disbarment."

The majority has not pointed out anything in the mere fact of driving while under the influence of intoxicating liquor which in and of itself evinces a depraved character or which renders a lawyer untrustworthy or a reflection upon the bar or the court, as an officer thereof, as distinguished from the violation of any other law of the road which unintentionally results in the death of another.

I dissent.