**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Appellee,**

v.

**Lawrence MARCUCCI, Appellant.**

**No. 95–1578.**

Supreme Court of Iowa.

Feb. 14, 1996.

Gerald W. Crawford and Rush C. Nigut of The Crawford Law Firm, West Des Moines, for appellant.

David Grace, Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellee.

CARTER, Justice.

This matter comes to us as an appeal by respondent, Lawrence Marcucci, from the findings and recommendations of the grievance commission as allowed by Iowa Supreme Court Rule 118.11. That commission found that conduct of respondent resulting in a criminal conviction for operating a motor vehicle while under the influence (third offense), a felony, was a violation of Disciplinary Rule 1–102(A)(6) of the Iowa Code of Professional Responsibility for Lawyers. Irrespective of the fact that respondent is the appellant and the Board of Professional Ethics and Conduct (the board) is a nonappealing appellee, we review the report of the grievance commission de novo and, as provided in rule 118.10, "may impose a lesser or greater sanction than the discipline recommended by the grievance commission."

Lawrence Marcucci has been licensed to practice law in this state since 1975 and has, with a short interruption, practiced law in this state since that time. He is currently a shareholder of a Des Moines law firm, which practices as a professional corporation. His practice is primarily in the area of civil litigation.

On November 10, 1992, respondent was arrested and charged with operating a motor vehicle while intoxicated—third offense. Following his arrest, he voluntarily entered a twenty-eight-day inpatient treatment program for alcoholism at St. Mary's Hospital in Minneapolis, Minnesota.

On March 1, 1993, respondent pleaded guilty to the offense charged, which is a Class "D" felony. The respondent was sentenced to confinement at the Fort Des Moines Correctional Facility that required participation in a program for offenders who have committed alcohol-related crimes. He was confined at that facility for seventy-seven days and then released on parole under supervision. The conditions of parole included abstinence from all mood-altering chemicals, monitored antiabuse therapy, counseling, and regular attendance at Alcoholics Anonymous meetings. As a result of meeting those conditions, respondent was discharged from parole on May 18, 1994.

Upon our receipt of a certified copy of respondent's criminal conviction, this court, in November 1993, considered whether a temporary suspension of his license should be ordered. No temporary suspension was imposed. The complaint against respondent was filed in March 1995. It alleged that he had violated subsections 1 through 6 of Disciplinary Rule 1–102(A) and, in addition, that his felony conviction was cause for discipline under Iowa Code section 602.10122(1) (1993).[1]

The board, in prosecuting the case before the grievance commission, relied only on violations embodied in subsections 3, 5, and 6 of

---

1. Section 602.10122 provides:

    The following are sufficient causes for revocation or suspension:

    1. When the attorney has been convicted of a felony. The record of conviction is conclusive evidence.

DR 1–102(A) and the provisions of Iowa Code section 602.10122(1). The grievance commission found that respondent was at all times material suffering from alcoholism. It further found, however, that his legal practice had not suffered as a result of that circumstance or respondent's resulting criminal convictions for operating a motor vehicle while under the influence. The commission's report concluded, however:

> Although the record is replete with evidence that the Respondent continued to be an effective advocate during his problems with alcohol abuse, the Division is concerned with the public perception of an attorney with serious alcohol abuse problems and feels that such abuse "adversely reflected" on his fitness to practice law.

The finding of the commission, which we have quoted above, was the basis for its conclusion that respondent violated DR 1–102(A)(6).[2] We agree with that conclusion.

Respondent's case differs from other situations we have considered in which alcoholism has impacted on professional responsibility. It is not like *Committee on Professional Ethics & Conduct v. Sloan*, 262 N.W.2d 262–63 (Iowa 1978), in which an attorney's physical and mental ability to carry on his practice was impaired by alcoholism. The respondent in that case was suspended until such time as a satisfactory showing could be made that he was able to resume the responsibilities of a law practice. The present case also differs from the several cases in which alcoholism was alleged to play a role in an ethical violation committed in the handling of clients' affairs. Generally, we have not excused the ethical violation in those proceedings. *See, e.g., Committee on Professional Ethics & Conduct v. Sylvester*, 221 N.W.2d 803, 804 (Iowa 1974) (alcoholism should not affect the sanction imposed either in aggravation or mitigation).

Unlike the cases last described, respondent's ability to practice in the future has not been questioned nor have any past ethical violations been identified with respect to his handling of his clients' affairs. This case raises the issue of the extent to which an attorney may be subject to disciplinary action for criminal conduct involving activities outside the lawyer's professional role that have not been shown to have adversely affected the lawyer's clients. While we have never faced this issue within the context of an OWI offense, it has been before us in the context of other criminal activities.

In *Committee on Professional Ethics & Conduct v. Shuminsky*, 359 N.W.2d 442 (Iowa 1984), we imposed a minimum suspension of three months based on a misdemeanor conviction for possession of a controlled substance. In *Committee on Professional Ethics & Conduct v. Patterson*, 369 N.W.2d 798 (Iowa 1985), we imposed a minimum suspension of three months for a misdemeanor conviction of simple assault arising from a domestic dispute. In *Committee on Professional Ethics & Conduct v. Ramey*, 424 N.W.2d 435 (Iowa 1988), and *Committee on Professional Ethics & Conduct v. Klein*, 394 N.W.2d 358 (Iowa 1986), we imposed minimum suspensions of six and nine months, respectively, for failure to file income tax returns in situations in which no tax was owing. In *Committee on Professional Ethics & Conduct v. Barrer*, 495 N.W.2d 756 (Iowa 1993), and *Committee on Professional Ethics & Conduct v. Floy*, 334 N.W.2d 739 (Iowa 1983), we imposed minimum suspensions of twenty-four months and eighteen months, respectively, based on misdemeanor convictions for making obscene phone calls. In *Committee on Professional Ethics & Conduct v. Tompkins*, 415 N.W.2d 620 (Iowa 1987), we imposed a minimum suspension of twenty-four months based on a conviction for trespass by a male lawyer for purposes of stealing female undergarments. In *Committee on Professional Ethics & Conduct v. Vesole*, 400 N.W.2d 591 (Iowa 1987), we imposed a minimum suspension of thirty-six months for three simple misdemeanor convictions for indecent exposure. In *Committee on Professional Ethics & Conduct v. Lindaman*, 449 N.W.2d 341 (Iowa 1989), we revoked an attorney's license based on two felony convic-

---

**2.** DR 1–102(A)(6) provides:

A lawyer shall not:

. . . .

(6) Engage in any other conduct that adversely reflects on the fitness to practice law.

tions for lascivious acts with a child. In none of the foregoing disciplinary cases was the sanction imposed based on a consideration of the effect of the criminal conduct on the quality of the lawyer's services.

■ Respondent seeks to distinguish the disciplinary cases to which we have referred on the basis that the present offense does not involve moral turpitude. He cites several decisions from other jurisdictions to support that point. The response we must make to this contention, however, is that, although conduct involving "moral turpitude" is an element for establishing a breach of DR 1–102(A)(3), it need not be established to support a violation of DR 1–102(A)(6). Support for this view is found in a lawyer discipline decision of the New Mexico Supreme Court in *In re Morris*, 74 N.M. 679, 683, 397 P.2d 475, 477–78 (1964).

At the time of the decision in the *Morris* case, the New Mexico code for discipline of lawyers provided that conviction of a crime involving moral turpitude was conclusive proof of an ethical violation. Another provision of that code provided that "the commission of any act contrary to honesty, justice or good morals, whether the act is committed in the course of his relations as an attorney or otherwise, and whether or not the act is a felony or misdemeanor, constitutes a cause for discipline." In discussing the disciplinary consequences of an involuntary manslaughter conviction based on driving while intoxicated, the court stated:

> [W]hereas the first offense of driving while under the influence of intoxicating liquor when considered with the penalty provided was held by us to be a petty offense, it does not follow that the offense of involuntary manslaughter, which requires a much greater penalty, is likewise a petty offense. Under our law it is clearly a felony.

> While not prepared to declare that in every case where a felony has been committed by a member of the bar disciplinary action is justified or required, as contended by the board of bar commissioners, we must concede that we have difficulty in imagining what kind of a felony could be considered as not being "contrary to hon-

esty, justice or good morals...." That the act may or may not be a misdemeanor or a felony is purely coincidental. *Similarly, moral turpitude is not a consideration.* If a member of the bar commits a crime involving moral turpitude, this fact is conclusive against him and discipline is required. However, whether the misconduct with which a person is charged is a crime involving moral turpitude or, if a crime, whether it is *malum prohibitum* or *malum in se;* or, for that matter, if the act is neither a felony nor a misdemeanor, is not the issue.

*Id.* at 683, 397 P.2d at 477–78 (emphasis added).

■ We need not decide the gravity of a first-offense conviction for OWI for purposes of applying DR 1–102(A)(6). The crime of which respondent was convicted is a felony under our laws and thus constitutes an extremely serious breach of the rules of society. Section 602.10122(1) provides that any felony may be grounds for revocation or suspension of a lawyer's license. The grievance commission was correct in its conclusion that the conduct embraced by such an offense adversely reflects on a lawyer's fitness to practice law.

Our inquiry does not end at this point, as we must consider what sanction is appropriate for respondent's violation. The grievance commission concluded that, as a result of his rehabilitative efforts and his prognosis for success in the practice of law, a reprimand is a sufficient sanction. We disagree. We considered the effect of an apparently successful rehabilitation program on lawyer discipline in *Tompkins*, 415 N.W.2d at 622–24. We concluded that "though not cured, Tompkins has indeed recovered to a point that he probably does not pose a threat to the public." Nevertheless, we stressed "the seriousness of Tompkins' conduct which bears directly on his fitness to practice law." *Id.* at 623.

■ The term "fitness" as used in DR 1–102(A)(6) and our *Tompkins* decision embraces more than legal competence. Sanctions for violations of DR 1–102(A)(6) are given for conduct that lessens public confidence in the legal profession. *Tompkins*, 415

N.W.2d at 624 ("We might ask ourselves how the public can have confidence in our system of justice if we overlook or minimize knowing and willful criminal conduct."). We believe that to give only a reprimand for respondent's criminal violation would indeed minimize the seriousness of the violation. In *Patterson*, 369 N.W.2d at 801, we ignored labels and simply asked whether the conduct at issue was any less serious than other criminal acts for which substantial discipline was ordered. If we apply that test in the present case, we are forced to conclude that respondent's misdeeds were fully as serious as those of other lawyers who have received suspensions.

■ Based on our findings and conclusions, we order that respondent's license to practice law in this state should be suspended with no possibility of reinstatement for six months. This suspension shall apply to all facets of the practice of law. *See* Iowa Sup. Ct.R. 118.12. Costs of the proceedings are assessed against respondent. *See* Iowa Sup. Ct.R. 118.22. Upon application for reinstatement, respondent shall have the burden to prove that he has not practiced law during the period of suspension, that he meets the requirements of Iowa Supreme Court Rule 118.13, and that he has paid the costs herein assessed.

**LICENSE SUSPENDED.**

All Justices concur except HARRIS, J., who concurs in part and dissents in part; NEUMAN, J., who dissents; and LAVORATO and TERNUS, JJ., who take no part.

HARRIS, Justice (concurring in part and dissenting in part).

My disagreement with the majority opinion is a narrow one. I entirely concur in the majority's recitation of the facts, statement of issues and its legal conclusions. I agree that respondent's convictions amount to conduct for which he should be disciplined. I disagree only with the sanction imposed because under the circumstances I am convinced that a reprimand is all that is necessary or warranted.

The majority is clearly correct in holding that alcoholism cannot justify unlawful conduct. The majority is also correct in observing both that operating a motor vehicle while intoxicated is a serious criminal offense, and respondent's third such offense is a felony reflecting adversely on him and consequently on the profession. I emphasize, in disagreeing with the suspension, that in no way do I minimize the seriousness of respondent's misconduct.

Mitigating circumstances nevertheless convince me that license suspension is unnecessarily harsh and inappropriate here. First, though of course not binding on us, the commission and board recommend a reprimand, a recommendation that should weigh in the balance. Second, as noted by the majority, the respondent's professional efforts were in no way compromised by his alcoholism. The majority points out that we often see cases in which alcoholism leads directly to a client's harm. That is not the case here; respondent has been an outstanding lawyer of unquestioned ability and integrity.

Third, to his considerable credit, the respondent has resolutely faced up to his alcoholism and has demonstrated a willingness and ability to control it. I recognize this disciplinary proceeding may have been a motivating factor. Even so, the sure knowledge that another proceeding would inevitably follow any similar misconduct in the future would surely be a continuing motivation.

Because he has so well addressed it, I think it should militate in respondent's favor that his alcoholism, now under recovery, is the prime element in the criminal offense that has led him here. I yield to no one in my insistence that our court holds the exclusive power and responsibility in matters of licensing and disciplining lawyers. We should nevertheless consider the societal decision that labels alcoholism as a handicap. This is the view taken in the state and federal legislation mentioned in *Consolidated Freightways, Inc. v. Cedar Rapids Civil Rights Commission*, 366 N.W.2d 522, 527–28 (Iowa 1985) (recognizing alcoholism as a disability/handicap if it does not interfere with job performance). I point to this legislation, not to suggest it bears on lawyer disciplinary cases, but only because it casts light on how the respondent's misconduct reflects on the

public perception of the profession. Society views alcoholism as an affliction.

Under the authority cited by the majority, alcoholism does not justify wrongful acts. I would have no patience with respondent if he had failed to come to terms with his alcoholism. Because he did however, I think the case falls within those appropriate for the reprimand recommended by the commission.

The respondent has answered in criminal court. He has also addressed the root cause of his difficulty. A reprimand, though clearly a much lighter sanction than the suspension, is no trifling matter. I would order nothing more.

NEUMAN, Justice (dissenting).

Drawing the line between acceptable and unacceptable conduct is an onerous task, especially when done in the light of our own human frailties. But I firmly believe that the commission of a felony should disqualify a lawyer from practicing in the courts of this state. I therefore respectfully dissent from the majority as well as the other dissenting opinion.

Society may rightly view alcoholism as an affliction. But this case is not just about a recovering alcoholic. It is about a recovering alcoholic who chose to be a criminal, and still wants to be a lawyer. In my view, no amount of personal redemption by Mr. Marcucci can make up for the cloud his continued enrollment casts on our bar—that we are a profession that welcomes felons among its ranks.

I dissent from the majority opinion because I believe Mr. Marcucci, by his action, has forfeited his right to practice law in this state. His status as a felon renders him unfit. I would revoke his license.