# JANUARY, 1935

CHARLES A. WAGGOMAN ET AL. V. FORT WORTH WELL
MACHINERY & SUPPLY COMPANY ET AL.

No. 6312.   Decided November 28, 1934.
Motion for rehearing overruled January 12, 1935.
(76 S. W., 2d Series, 1005.)

*J. W. Stitt* and *John Morrison,* both of Fort Worth, for
plaintiffs in error.

As to admissible of character testimony: McDaniel v. King,
16 S. W. (2d) 931; Railway Mail Assn. v. Forbes, 49 S. W. (2d)
880; Harbison v. Chicago, R. I. & P. Ry. Co., 37 S. W. (2d)
609; 9 R. C. L., 711.

On question of conduct of jury.   Scottino v. Ledbetter, 56
S. W. (2d) 282; Monkey Grip Rubber Co. v. Walton, 122 Texas,
185, 53 S. W. (2d) 770.

*J. A. Templeton, W. P. McLean, McLean, Scott & Sayers,*
all of Fort Worth, for defendants in error.

As to the admissibility of the character of plaintiff: Gilmer v. Graham, 52 S. W. (2d) 263; Jenkins v. Pure Oil Co., 53 S. W. (2d) 497.

Misconduct of jury is fact question to be decided by the trial court and court of civil appeals. Dallas Ry. & Ter. Co. v. Garrison, 45 S. W. (2d) 185; Texas Em. Assn. v. Chocolate Shop, 30 S. W. (2d) 416, id., 44 S. W. (2d) 989.

MR. JUSTICE PIERSON delivered the opinion of the court.

This is a suit filed by Charles A. Waggoman and the trustee of his estate, Finnis E. Morgan, against the Fort Worth Well Machinery & Supply Company, a corporation, and H. G. Parr, its director, secretary-treasurer, and general manager, and against W. B. Brown, its director, vice-president, and sales manager, for damages for false imprisonment and to cancel and set aside a note and deed of trust alleged to have been executed because of duress and force on the part of the defendants. Plaintiffs had judgment in the District Court for $2,500 actual damages and $2,500 exemplary damages, and for cancellation of the note and deed of trust. This judgment was reversed and the cause was remanded by the Court of Civil Appeals. 52 S. W. (2d) 306. The case is fully stated in the opinion of that court.

Plaintiffs alleged that Waggoman, an employee of defendants, was imprisoned in a private room in a Fort Worth hotel, where through fear and distress of mind he was compelled to sign a purported confession of the theft of $9,000 from defendants, and to execute a note for $7,500 and a deed of trust to certain of his property to secure the note. Defendants generally denied plaintiffs' allegations, and filed a cross action for judgment on the note and foreclosure of the deed of trust. In addition, defendants alleged that while in their employ Waggoman had been defrauding them in large amounts by selling goods and retaining the money; that he had confessed to such actions; and that he had further defrauded them by turning in false reports as timekeeper. In a supplemental petition, plaintiffs denied all these allegations, except as to $13.20, which plaintiff Waggoman alleged he had not had opportunity to turn over to defendants at the time of the alleged false imprisonment, and which was tendered into court.

In the Court of Civil Appeals, defendants complained of the action of the trial court in allowing D. S. Raines, F. A. Hall, John J. Winter, Mrs. F. A. Hall, Frances Ochs, Joe Arnold, and Mrs. S. R. McMullen to testify that they knew Waggoman's

general reputation in the community where he lived for honesty and fair dealing and that his reputation was good; that they knew his general reputation in the community for truth and veracity and that it was good; also, that Waggoman's character was that of a passive and submissive man, who was easily influenced by others, and that his mind was more like that of an immature boy than that of a man. In its original opinion the Court of Civil Appeals held this testimony admissible, but on a motion for rehearing reversed its position and held the testimony inadmissible. We believe that the trial court committed no error in admitting this evidence, and that the original holding of the Court of Civil Appeals was correct.

■ The question of law involved here is correctly stated in Grant v. Pendley, 39 S. W. (2d) 596 (Tex. Com. App.). There it was said:

"We therefore announce the rule to be that supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of this action directly involves the character of a party, where a witness has been impeached, or where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude." See authorities cited.

While it may not be said that there was an attempt to impeach Waggoman as a witness, it seems evident to us that the two other conditions for the admission of this evidence in regard to Waggoman's reputation for truth and veracity, and for honest and fair dealing, existed in this case. The cross action of defendants in error and the testimony elicited by them constituted an attack on Waggoman's character and charged him with embezzling their funds.

■ The testimony that Waggoman's character was that of a passive and submissive man who was easily influenced by others, and that his mind was more like that of an immature boy than that of a man, we likewise regard as admissible in this case. Article 1172 of the Penal Code, setting out the character of threat necessary to amount to false imprisonment, provides:

"The threat must be such as is calculated to operate upon the person threatened and inspire a just fear of some injury to his or another's person, reputation or property and the age, sex, condition, *disposition* or health of the one threatened is to be considered in determining whether the threat was sufficient

to intimidate and prevent such person from moving beyond the bounds in which he was detained." (Italics ours.)

Therefore it would seem that the disposition of the injured party is to be considered in determining whether or not there has been a false imprisonment. See also 9 R. C. L., 711, sec. 2; Bouvier's Law Dictionary, Rawle's Third Revision, "Duress." We are at a loss to understand how such "disposition" could be shown without admitting evidence such as that of which complaint is made.

■ In its original opinion the Court of Civil Appeals reversed and remanded the case for a new trial, on account of certain alleged misconduct of the jury. Its opinion on rehearing also gave said alleged error as a ground of reversal. It is our opinion that the Court of Civil Appeals erred in so holding. The case was submitted to the jury on special issues, which, together with the answers of the jury, are set out in the opinion of the Court of Civil Appeals.

Frank W. Wayman, who was foreman of the jury, and R. E. Caswell, another juror, testified on motion for rehearing that after the jury retired to the jury room, and after they had indulged in some discussion of the case, they took a "straw vote" as to how the jury stood for or against plaintiff. Their testimony further discloses that they thoroughly and carefully considered each question on its merits, and answered each question according to the testimony in the case. There is no evidence at all that the jury purposely or designedly undertook to conform their answers to the question to the "straw vote" that they had taken. In fact, the indication is that they did not so design or purpose to answer the questions, and that they were not influenced in their findings of fact by said "straw vote."

The question of this character of misconduct of a jury has been before this Court in quite a good many cases and has been thoroughly analyzed and discussed by this Court, and the rule is well settled as to what constitutes misconduct of a jury under similar facts in this character of case. We will make reference to three of the latest cases.

In Simmonds et al. v. St. Louis, B. & M. Ry. Co., 29 S. W. (2d) 989, in an opinion written by Judge Sharp, of the Commission of Appeals, and approved by the Supreme Court, it was said:

"The courts of this state have held, and it now seems to be the settled rule, that the purpose of article 2189 is to prevent a jury from first determining that they will give a party to the

suit a verdict, *and to then frame their answers so as to carry out their agreement.*" (Italics ours.)

In Texas Employers' Ins. Assn. v. Chocolate Shop, Inc., 44 S. W. (2d) 989, in an opinion by Judge Critz, of the Commission of Appeals, it was said:

"However, the testimony of both of these jurors taken as a whole negatives the contention that the jury first agreed on the result to be accomplished, *and then designedly answered the several questions so as to accomplish that result.*" (Italics ours.)

In Monkey Grip Rubber Co. v. Walton, 122 Texas, 185, 53 S. W. (2d) 770, in an opinion by Judge Leddy, of the Commission of Appeals, in answer to certified questions from the Court of Civil Appeals, which answers were adopted by the Supreme Court and ordered certified, this Court used the following language:

"When a case is submitted on special issues, it is the duty of the jury to answer each special issue as the facts justify without regard to the effect of such finding upon the judgment to be thereafter rendered in the cause. Simmonds v. St. Louis B. & M. Ry. Co. (Tex. Com. App.), 29 S. W. (2d) 989; G. C. & S. F. Ry. Co. v. Harvey (Tex. Com. App.), 276 S. W., 895; Coons v. Culp (Tex. Civ. App.), 278 S. W., 914.

"It is such misconduct as will require a reversal if it be shown that a jury has agreed, in advance of answering the issues submitted, in whose favor the verdict should be, and thereafter attempts to answer the question submitted with a view of bringing about such result. Bradshaw v. Abrams (Tex. Com. App.), 24 S. W. (2d) 372.

"However, the mere agreement by members of a jury during their deliberation as to which party they think is entitled to a verdict is not alone sufficient to constitute reversible error. It must also be shown that the jury has deliberately attempted to make the same effective by framing the answers to the issues submitted in such a way as to accomplish the desired result."

We do not deem it necessary to set out in detail the testimony of the jurors on motion for rehearing, or to further discuss the principles of law involved. We adhere to the announcements made in the above decisions. Therefore the judgment of the Court of Civil Appeals should be reversed, and that of the District Court affirmed, and it is so ordered.