**S. H. KRESS & CO. v. RUST.**

No. 13427.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 9, 1936.

Rehearing Denied Nov. 6, 1936.

Slay & Simon, of Fort Worth, for appellant.

Rogers & Spurlock, of Fort Worth, for appellee.

DUNKLIN, Chief Justice.

S. H. Kress & Co., defendant in the trial court, has appealed from a judgment in favor of plaintiff, Mrs. Nuavitte Rust, reading as follows:

"On this the 14th day of September, A. D. 1935, came on to be heard the above entitled and numbered cause and the plaintiff appearing in person and through her attorneys, and the defendant appearing through its attorneys and all parties announcing ready for trial, a jury having been waived, all questions of fact as well as of law were submitted to the Court and the Court having considered the pleadings and the evidence and the arguments of counsel is of opinion that the law and the facts are with the plaintiff.

"It appearing to the Court that on or about the 6th day of June, 1935, the plaintiff, Mrs. Nuavitte Rust, a single woman, entered the store of the defendant, S. H. Kress & Company, a private corporation in the City of Fort Worth, Tarrant County, Texas, and there purchased a small article and that thereafter as she walked along the public streets of the City of Fort Worth, she was forcibly stopped by Orinda Carlson and May Dell Morris who were the agents, servants and employees of the defendant, S. H. Kress & Company, and that when she was accosted by said agents, servants and employees she was accused by them of having stolen twenty-five cents worth of tatting or lace from their employer; and it further appearing to the Court that the said Orinda Carlson and May Dell Morris were in the apparent scope of their employment in said acts and that they did then and there in the presence of onlookers on the streets of the City of Fort Worth, publicly accuse plaintiff of having stolen said article and took from her her purse and searched it on the streets within the view and hearing of the onlookers, and that they found nothing therein, but then proceeded to take plaintiff against her will forcibly and without any warrant or other lawful authority to the dressing room of the defendant, S. H. Kress & Company, where she was required against her will to be stripped to the skin and personally searched and where no stolen articles were found; and it further appearing to the Court that when the plaintiff Mrs. Nuavitte Rust was accosted and stopped on the streets as aforesaid by the agents, servants and employees of the defendant, acting within the scope of their employment, that she was forcibly stopped and detained against her will and consent; and it further appearing to the Court that she was by said agents, servants and employees of the defendant taken to the dressing room of the defendant against her will and consent, and with force and that she was there forcibly and against her will and consent required to disrobe and be searched; and it further appearing to the Court that C. L. Stocks, agent, servant and employee of the defendant, S. H. Kress & Company, was serving the defendant S. H. Kress & Company on said date as assistant manager of its Fort Worth store, and that the said C. L. Stocks, assistant manager, had express authority from his employer S. H. Kress & Company to do all of the acts that were done by the said May Dell Morris and Orinda Carlson and that he was informed by the said May Dell Morris and Orinda Carlson of the fact that the plaintiff, Mrs. Nuavitte Rust, had been by said Orinda Carlson and May Dell Morris, detained on the streets of the City of Fort Worth and had been by them brought into the dressing room of the defendant, S. H. Kress & Company, and had been by them there required to disrobe and submit herself, her clothing and her person to a search for stolen goods, and that none had been found; and it further appearing to the Court that with full knowledge of what had gone before the said C. L. Stocks, assistant manager of the Fort Worth store of the defendant, S. H. Kress & Company, called the Police Department of the City of Fort Worth and turned the plaintiff, Mrs. Nuavitte Rust, over to the two City detectives who came to the store of the defendant for the pur-

pose of taking plaintiff to the city jail in custody, and that plaintiff was by said officers taken through a portion of the main business floor of the defendant during hours when the defendant was open for business and when customers were in its said store and was by said officers taken to the city jail and that subsequently thereto plaintiff was transferred by the Police Department in the custody of an officer to the District Attorney's office of Tarrant County in the City of Fort Worth; it further appearing to the Court that plaintiff was met at the District Attorney's office by the said C. L. Stocks, agent, servant and employee of the defendant and by one of defendant's counsel of record in this cause, where a conversation between plaintiff and the said C. L. Stocks and defendant's attorney of record took place with regard to releasing this defendant of any and all liability in connection with said detention of plaintiff by the agents, servants and employees of the defendant; and it further appearing to the Court that when the matter of the release was first mentioned plaintiff stated that she should like to have two or three days to think the matter over, whereupon the said C. L. Stocks, agent, servant and employee of defendant, who was acting within the cope of his authority at said time, informed plaintiff that she could not and would not be given the time requested in which to think the matter of the release over, but that it had to be done at that time; and it further appearing to the Court that plaintiff did at that time and on that occasion execute an instrument purporting to release the defendant S. H. Kress & Company from any and all liability in connection with said false arrest and imprisonment in consideration of the sum of One Dollar and an apology from the defendant S. H. Kress & Company, but that at the time she did so she was given to understand by the said C. L. Stocks, agent, servant and employee of the defendant, acting within the scope of his employment, that unless she did execute such instrument at said time and while she was in custody that she would be delivered back to the officers of the City of Fort Worth for confinement in the jail and that the hour of the day was growing late and that she had an aged and infirm father and a seven-year old child, both of whom were dependent upon plaintiff and that she did not exercise her own will in executing said purported release, but was moved to do so solely for the rea-

son that she was led to believe by the said C. L. Stocks that unless she did so she would be confined in jail and would be held further in custody, and that said purported release was, therefore, obtained by the defendant by duress and coercion; it further appearing to the court that the plaintiff, Mrs. Nuavitte Rust, tendered to the defendant the return of the One Dollar which was paid by defendant to her on the occasion of the execution of the purported release by plaintiff which said tender was made in open court; and it further appearing to the Court that the plaintiff, Mrs. Nuavitte Rust, was not guilty of the theft with which she was accused by the defendant and that the defendant and its agents, servants, and employees had no probable cause to believe her guilty thereof, but acted with malice in connection with her unlawful and wilful detention and that such detention was against plaintiff's will and without any warrant of arrest or other lawful authority on the part of the defendant and that the defendant S. H. Kress & Company, acting by and through the said C. L. Stocks, its assistant manager, who had express authority to do all the acts done by the said Orinda Carlson and May Dell Morris, who were acting within the apparent scope of their employment, in all things ratified and confirmed the acts of the said Orinda Carlson and May Dell Morris in connection with said detention; and it further appearing to the Court that the plaintiff, Mrs. Nuavitte Rust, on the occasion in question was by the defendant, its agents, servants and employees, falsely imprisoned with malice and without probable cause and that she has been damaged thereby, the Court is of opinion that the plaintiff should recover her damages of and from the defendant.

"It is therefore the order, judgment and decree of the Court that the purported release executed by the plaintiff, Mrs. Nuavitte Rust in favor of the defendant, S. H. Kress & Company, purporting to release defendant from any and all liability in connection with said false arrest and imprisonment be and the same is hereby cancelled, set aside and held for naught. It is further the order, judgment and decree of the Court that the plaintiff, Mrs. Nuavitte Rust, recover of and from the defendant, S. H. Kress & Company, the sum of Two Thousand Dollars, Fifteen Hundred Dollars as actual damages and Five Hundred Dollars as exemplary damages, together with interest thereon from and

after this date at the rate of six per cent. per annum until paid. It is further the order, judgment and decree of the court that the plaintiff, Mrs. Nuavitte Rust, do have and recover of and from the defendant S. H. Kress & Company all costs in this behalf expended, for all of which let execution issue.

"[Signed]  A. J. Power, Judge."

The wrongs recited in the judgment were all alleged in plaintiff's original petition, to which defendant pleaded a general demurrer and a general denial, and a special plea of want of authority in the defendant's servants to do the acts complained of as wrongful, also a plea of settlement of any right of action therefor by reason of plaintiff's written agreement of satisfaction for a valuable consideration paid to her. By a verified supplemental petition, plaintiff alleged a ratification by defendant of the acts of defendant's servants, and also a verified plea that the contract of settlement was procured by coercion and duress on the part of defendant's duly authorized agents, and therefore void.

▮▮▮ Appellant insists that the evidence fails to show that the release pleaded was obtained under duress or coercion, and that therefore the same was a bar to plaintiff's suit. In support of that proposition, portions of plaintiff's own testimony and that of other witnesses are cited. The contention is based chiefly on testimony to the effect that while plaintiff was under arrest and before she signed the release, she sought advice from Mr. Wade, assistant district attorney, who was her friend, and other testimony tending to show she was not in an excited state of mind and acted deliberately in reaching a conclusion as to whether she should execute it, yet she further testified that she was told by defendant's representatives who had caused her arrest that unless she executed the release she would be put in jail, and that by reason of that threat and the fact that her presence at home was necessary for the care of her child and her father, and that but for such threat she would not have signed it. And that testimony was corroborated by other facts and circumstances in evidence, and testimony of several other witnesses, including Mr. Wade, the assistant district attorney.

An extended discussion of all the testimony bearing on that point would unduly extend this opinion. We believe it sufficient to say it fully supported the findings of the trial court on the issue of duress.

"Duress has been defined as 'an actual or threatened violence, or illegal restraint of a man's person, to compel him to enter into a contract, or to do some act which, in the absence of such violence or restraint, might be valid, or legally effective.'" 10 Tex.Jur. p. 70, § 39.

"There is no general rule for determining the sufficiency of facts to constitute duress, and no legal standard of resistance with which the person threatened must comply at the peril of being remediless. The restraint, intimidation or compulsion is sufficient if it induces the particular person claiming duress to perform some act which he is not legally bound to do, contrary to his will. The question for determination is as to how the influence used affected his mind, and as to whether his mind and will were controlled." 10 Tex.Jur. p. 73, § 41.

To the same effect, see: 10 Tex.Jur. p. 78, § 45, p. 80, § 46; 7 Tex.Jur. p. 893, § 8, p. 897, § 10; Southern Traction Co. v. Rogan (Tex.Civ.App.) 199 S.W. 1135; Ward v. Scarborough (Tex.Com.App.) 236 S.W. 434; Spaulding v. Crawford, 27 Tex. 155; Wegner Bros. v. Biering & Co., 65 Tex. 506; Landa v. Obert, 78 Tex. 33, 14 S.W. 297; Morrison v. Faulkner, 80 Tex. 128, 15 S.W. 797; Dale v. Simon (Tex.Com. App.) 267 S.W. 467.

▮▮▮ As shown by articles 212, 213, 215, and 217, Code of Criminal Procedure, the arrest of plaintiff without a legal warrant was illegal, since she was not charged with the commission of a felony, the only charge being for theft of 25 cents worth of tatting, which would be a misdemeanor, if guilty.

Following are articles of our Penal Code:

Article 1169: "False imprisonment is the wilful detention of another against his consent and where it is not expressly authorized by law, whether such detention be effected by an assault, by actual violence to the person, by threats or by any other means which restrains the party so detained from removing from one place to another as he may see proper."

Article 1298: "Whoever for the purpose of extorting money from another, or the payment or security of a debt due him by such other, or with intent to vex, harass

or injure such person, shall institute or cause to be instituted any criminal prosecution against such other person, shall be fined not less than one hundred nor more than one thousand dollars, or be confined in jail not less than one month nor more than one year."

Plaintiff was arrested and restrained of her liberty on a charge of theft of 25 cents worth of tatting in the absence of any legal complaint filed against her and warrant issued thereon, and the proof showed without controversy that after she executed the release and in consideration therefor the defendant abandoned further proceedings to have her tried and convicted of theft and the whole proceedings were then terminated. All of which, in substance, was alleged in plaintiff's pleadings, which presented a case for false imprisonment, as distinguished from malicious prosecution.

It is true that a cause of action for malicious criminal prosecution does not accrue until the prosecution has terminated in plaintiff's favor. 28 Tex.Jur. § 7, p. 454. But in 19 Tex.Jur., § 15, p. 559, it is said: "The courts of Texas are in accord with the weight of authority in holding that the termination of the prosecution is not an essential element to the maintenance of an action for false imprisonment. The arrest being wrongful, recovery may be had although the plaintiff pleaded guilty to a charge and paid a fine in order to avoid remaining in jail."

Hence the further contention of appellant that no right of action accrued to plaintiff until she had been legally acquitted of the charge of theft, or the prosecution terminated by a court order of dismissal, and that in the absence of pleading and proof of such facts, the judgment rendered was erroneous, is without merit, first, because the case presented in plaintiff's pleadings was for false imprisonment, which did not require such a showing, and, second, because the proof showed conclusively that the whole proceedings taken by defendant against plaintiff were in fact terminated before the suit was filed.

We quote the following from 19 Tex. Jur., p. 588, § 37: "The plaintiff should be compensated, also, for injury to his health, and for the physical and mental suffering resulting from the wrongful act, of which humiliation, shame, fright and like emotions are elements to be considered. If the defendant, in committing the wrong complained of, acted recklessly, or wilfully and maliciously, with a design to oppress and injure the plaintiff, the jury may award such additional exemplary damages as they may deem proper."

See, also, cases cited in footnotes to section 38, page 559, of 19 Tex.Jurisprudence, in which damages were awarded in substantial amounts for false imprisonment and in some for exemplary damages also. And damages in a much larger amount were allowed for false imprisonment in Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.(2d) 1005, and in Magnolia Petroleum Co. v. Guffey (Tex.Civ.App.) 59 S.W.(2d) 174.

Accordingly, we overrule the contention in substance that since witnesses testified without contradiction that plaintiff's reputation for honesty had not been impaired as the result of the wrongs committed by defendant's agents, no damages therefor were recoverable.

The findings of the trial court of facts upon which allowance of exemplary damages in addition to actual damages was made have ample support in the testimony and hence award of such damages cannot be disturbed. Fort Worth Elevator Co. v. Russell, 123 Tex. 128, 70 S.W.(2d) 397; Gold v. Campbell, 54 Tex.Civ.App. 269, 117 S.W. 463; Underwood Typewriter Co. v. Shouldis (Tex.Civ.App.) 253 S.W. 935; Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S. W.(2d) 1005.

Nor did the court err in admitting testimony of plaintiff's general reputation for truth and veracity and honesty. Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.(2d) 1005; Brannon v. Gartman (Tex.Com. App.) 288 S.W. 817; Grant v. Pendley (Tex.Com.App.) 39 S.W.(2d) 596, 78 A.L. R. 638.

The finding of the trial court that plaintiff was arrested and detained without probable cause was also fully sustained by testimony introduced.

All assignments of error are overruled, and the judgment of the trial court is affirmed.