**TWIN CITY FIRE INSURANCE COMPANY, Appellant,**

**v.**

**Raymond GIBSON, Appellee.**

**No. 8237.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 22, 1972.

Rehearing Denied Dec. 18, 1972.

Gibson, Ochsner, Adkins, Harlan & Hankins (Jewett E. Huff), Amarillo, for appellant.

Gibbins & Spivey (Bob Gibbins), Austin, for appellee.

JOY, Justice.

This is a workmen's compensation case wherein judgment was rendered in favor of plaintiff-appellee Raymond Gibson for total and permanent disability and against defendant-appellant Twin City Fire Insurance Company. Affirmed.

Appellee, at the time the alleged injury occurred which is the basis of this suit, was employed as a journeyman lineman for Southwestern Public Service Company in Plainview, Hale County, Texas. It is stipulated that a claim was received by the Industrial Accident Board (hereinafter referred to as Board) stating, in part, that appellee had sustained an injury to his left shoulder while lifting an electric line and that as a result of the injury, appellee was permanently disabled. The claim before the Board further stated that the injury occurred in Plainview, Hale County, Texas. The claim was acted upon favorably to appellee and appellant appealed from this determination. It is undisputed that the original petition filed by appellee in the district court gave the location and date which appellee sustained an injury as January 16, 1970, in Plainview, Hale County, Texas. However, an amended petition was filed by appellee prior to trial on the merits which alleged the location and date of the injury as being sustained on or about January 16 or 23, 1970 in Castro County, Texas. Otherwise, the basic allegations contained in the claim before the Board and the amended petition of appellee are essentially the same. Appellant filed a plea to the jurisdiction of the court asserting a fatal variance between the claim before the Board and the claim presented in the amended petition of appellee. This plea was overruled and trial was to a jury. Judgment was entered in favor of appellee for total and permanent disability. Appellant has duly perfected appeal from the trial court's judgment assigning 75 points of error, such points being grouped into several categories.

Appellant, in points of error nos. 1 through 8 and 48, 50 and 53, asserts primarily that there is a fatal variance between the appellee's claim before the Board and his amended petition upon which the case went to trial, and that the court erred in failing to submit various special issues pertinent thereto. Appellant contends that the claim before the Board listed the place and time of the injury asserted by appellee to have been in Plainview, Hale County, Texas on January 16, 1970 and the amended petition of appellee lists the injury to have been in Castro County, Texas on or about January 16, or 23, 1970, and therefore the claim presented by this lawsuit was not presented to the Board and the court lacked jurisdiction to hear the case.

One of the initial requirements of our Workmen's Compensation Statute is that a claim for benefit under the act must first be presented to the Board. The Board must have an opportunity to pass upon the claim before it may be presented in court. Appeal from the decision of the Board is trial de novo in the district court with the jurisdictional requirement that the claim before the court has been presented to the Board. Hartford Accident & Indemnity Co. v. Choate, 126 Tex. 368, 89 S.W.2d 205 (1936). Various interpretations of this rule have been expressed in case law. One

interpretation of the rule is to allow a claimant to enlarge his claim where injuries are generally described before the Board. It has been stated that the purpose of filing the claim is to give sufficient information so that a proper basis for investigation, hearing and determination of the claim is presented. In the case before us the nature of the injury complained of by appellee is not the basis of appellant's contention that there is a fatal variance. The claim before the Board and the petition before the court reflect the same basic description and nature of injury. The basis of appellant's attack upon the jurisdiction of the court is couched in terms of a variance in the date and location of the injury.

■ We do not believe the difference in the date and location of the alleged injury is a fatal variance under the facts before us. We take judicial cognizance that Hale and Castro Counties are adjacent to each other. Appellant relies upon the case of Solomon v. Massachusetts Bonding & Insurance Company, 347 S.W.2d 17 (Tex.Civ. App.—San Antonio 1961, writ ref'd) for the proposition that a variance in the time and location as stated in the claim before the Board and the petition before the court upon trial is fatal and the court has no jurisdiction. In the Solomon case the variance was two and a half years in time and 100 miles of distance and this discrepancy was held to be too great. We agree that an extensive variance in location and time such as that in the Solomon case would be fatal. However, the Solomon case is distinguishable and not applicable to the facts of the case before us. We do not believe there is an absolute guideline by which a variance is determined to be fatal or permissible. The rule in Texas as re-examined and enunciated in the case of Johnson v. American General Insurance Company, 464 S.W.2d 83 (Tex.Sup.1971) is as follows: "If the Board has had jurisdiction to pass upon the claim, and if there is a fair and substantial identity of the claim . . . thereafter sued upon in court, then there is no fatal variance." The critical factor

under this test has been referred to as the "identity of the claim."

■ In the case before us, the only variance between the claim before the Board and the claim presented in the district court was in relation to place and time. The nature and extent of the injury was identical. We do not believe the slight discrepancy in time and location of the alleged injury is fatal under the facts of this case and appellant's points of error nos. 1 through 8 and 48, 50 and 53 are overruled.

Appellant, in points of error nos. 9 through 22, complains of ruling of the trial court by which appellant was restricted from the introduction of certain evidence, to wit:

(1) The sustaining of objections to witness Lloyd Davis' testimony preventing him from testifying as to the details of the "sickness" and "accident" program furnished by Southwestern Public Service.

(2) Preventing appellant from showing numerous instances wherein appellee claimed benefits under the "sickness" program.

(3) In limiting the testimony of Lloyd Davis from giving reasons for appellee's discharge.

(4) In limiting appellant in his cross-examination of appellee in regard to the allegation that appellee had changed his story between the time he presented his claim to the Board and the time of trial.

(5) In preventing appellant's counsel from showing a prior inconsistent position taken by appellee.

(6) In excluding the testimony of Lloyd Davis as to various payroll checks issued by Southwestern Public Service which were under the company's "sickness" program rather than the "accidental" injury program and the

exclusion of various time sheets to the same effect.

(7) In excluding the terms and provisions of Southwestern Public Service Company's health and accident policy.

Appellant's points in this area are multifarious, lengthy and repetitious and the foregoing is a general summary of his points; the remaining points being objections to similar alleged restrictive rulings of the trial court of the same general nature. The crux of appellant's points of error in this area centers around the basic contention that appellant was denied, through various evidentiary rulings by the court, an orderly method of impeaching appellee. A brief recitation of the factual circumstances surrounding appellant's contentions in this area will be necessary.

Southwestern Public Service Company makes available to its employees two plans providing benefits for on-the-job and off-the-job injury or sickness. The "A" or accident plan encompasses Workmen's Compensation and is available only for on-the-job injuries. The "S" or sickness plan, covers any sickness or accident which occurs off the job and the employee is reimbursed by the company for his pay up to a certain length of time. The two plans heretofore described are mutually exclusive, i. e., one covers and prescribes benefits only for on-the-job injuries and the other covers and prescribes benefits only for off-the-job sickness or injury. In order for an employee to avail himself of the benefit of the "S" plan, his daily time sheets are coded with the inscription "S". Likewise, he must fill out his time sheets with the notation "A" in order to receive any benefits under the "A" plan.

██ Appellant argues in its brief that it was prevented from showing that appellee had received benefits under the "S" plan, thus claiming on off-the-job injury which would be totally inconsistent with appellee's claim that he was injured on the job. Appellee contends that any evidence of benefits received by appellee would be a viola-

tion of the collateral source rule. It is well settled that the collateral source rule prevents a litigant from showing payments from other sources such as insurance, retirement fund, social security, etc. Kainer v. Walker, 377 S.W.2d 613 (Tex.Sup.1964); Texas General Indemnity Company v. Hamilton, 420 S.W.2d 735 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.); R. E. Dumas Milner Chevrolet Company v. Morphis, 337 S.W.2d 185 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.); Traders & General Insurance Company v. Reed, 376 S.W.2d 591 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.); Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). Appellant states, however, that in this case the claims made by the appellee are admissible because they constitute prior inconsistent statements. While any benefits received by appellee would be inadmissible under the collateral source rule, the claims he made that constituted prior inconsistent statements would be admissible so long as they did not show on their face the reception of collateral benefits by him. Aetna Casualty & Surety Company v. Scott, 423 S.W.2d 351 (Tex.Civ.App.—Houston (14th Dist.) 1968, no writ); Traders & General Insurance Company v. Reed, supra. The record in this case reveals that the claims reported by appellee which are asserted to be prior inconsistent statements, were, in fact, admitted into evidence. In conjunction with these claims, evidence was admitted explaining the difference between the "S" and "A" plans of Southwestern Public Service Company to reveal that they were mutually exclusive and that a claim under the "S" plan would be inconsistent with a claim later presented wherein appellee asserted an on-the-job injury under the "A" plan. After appellee's claims were introduced into evidence appellant's counsel examined appellee as follows:

"Q. . . . Now, you did file under the John Hancock Plan or the medical plan, as you may be, you filed under the medical plan, as shown by these applications, didn't you, sir?

"A. I filed under them, yes, sir. Those forms, a lot of them that I signed blank. . . ."

\* \* \* \* \* \*

"Q. And you collected under that plan, didn't you, sir?

"A. Yes, sir, I collected for the hospitalization.

"Q. And this about medical expenses, you collected medical bills that were paid something in the area of sixteen or seventeen hundred dollars, didn't you, sir?

"A. That was the total bill, sir, I—

"Q. And your recollection is that you collected eighty percent of that?

"A. Yes, sir."

\* \* \* \* \* \*

"Q. In addition to that, under that plan, where you do not get hurt on the job, does the Public Service Company pay your full wages while you are off?

"A. Yes, sir."

In addition, appellee's counsel stipulated that appellee had received some benefits under the sickness plan. Therefore, appellant not only received the benefit of the introduction of appellee's claims into evidence, but also injected into evidence benefits received from a collateral source.

■ Further, regarding appellant's contentions that he was unable to show the difference between the "A" and "S" plans of Southwestern Public Service Company, the following testimony was adduced:

"Q. Is the policy the same with respect to on-the-job injuries as it is where they are disabled by some other reason, either injury or something else that is not on-the-job?

"A. The policies are not the same.

"Q. Do they overlap? In other words,
—

"A. No, sir.

"Q. State whether or not the policies are one or the other?

"A. It's one or the other.

"Q. And where you claim disability from an unknown cause or sickness or what not, what is that commonly referred to in the company parlance?

"A. That would come under your hospitalization and sick policy insurance, sickness."

On direct examination by appellee's counsel, appellee stated that he had filled out a claim which was rejected because the hospitalization plan covered only off-the-job injury. Thereafter, appellee testified that a second claim was prepared which specified an off-the-job injury so he could receive the benefits of the hospitalization policy. The record also contains other testimony as to the difference between the two plans.

■ After explaining that an employee who is claiming an off-the-job injury must record such fact by the notation "S" on his time sheet as opposed to the notation "A" for on-the-job injury, Mr. Davis testified as follows:

"Q. Now, with respect to the time that Mr. Gibson was off work from along about February 10, 1970, up until he returned to work following his operation, will you tell the jury how that was coded?

"A. He was coded 'S.'

"Q. Do you have those time sheets, Mr. Davis? Will' you get them, please?"

An objection was made and sustained to the last question by appellant's counsel and the time sheets were excluded from the evidence. Such action appellant contends was error. An examination of the time sheets reveals that they would provide no addi-

tional evidence by their introduction since the oral testimony of witness Davis encompassed the relevant impeachment matters contained in such time sheets. While the time sheets were admissible for impeachment purposes and it was error to exclude them, the error was harmless in view of the fact that there was oral testimony as to their content.

Appellant complains of the exclusion of the health and accident insurance policy held by Southwestern Public Service Company. Appellant, at the time the policy was offered into evidence, had failed to lay a proper predicate for its introduction and thus the trial court was correct in denying its admission into evidence. Even assuming arguendo that the policy was admissible and would not be an indirect manner of violating the collateral source rule, its relevant provisions were before the jury through oral testimony of the same nature. Appellant's points of error nos. 9 through 22 are overruled.

In points of error 26 through 29 appellant asserts insufficient evidence and against the great weight and preponderance of the evidence contentions as to the findings of the jury on special issue number 18. Special issue number 18 and its accompanying definitions read as follows:

"Do you find from a preponderance of the evidence that Southwestern Public Service Company had notice of such injury within thirty days after its occurrence?

"Notice to or actual knowledge on the part of a foreman or other supervisor, or an agent designated by the employer to receive such notice, is 'notice' to the employer.

"Answer 'Yes' or 'No'.

"ANSWER: Yes."

When dealing with the notice requirements of our Workmen's Compensation Act the following guideline has been announced by our Supreme Court in Lewis v. American Surety Co., 143 Tex. 286, 184 S.W.2d 137 (1944), where it is stated at page 140:

". . . But, this court has consistently held that it was the intention of the Legislature that the proceedings with reference to giving notice and filing claims should be informal, and great liberality should be indulged in determining the sufficiency and scope of such notices and claims. . . ."

It is well settled that oral notice of an injury to a foreman is sufficient. Texas Indemnity Ins. Co. v. Arant, 171 S.W.2d 915 (Tex.Civ.App.—Eastland 1943, writ ref'd w. o. m.); Booth v. Texas Employers' Insurance Ass'n, 132 Tex. 237, 123 S.W.2d 322 (1938); Royal Indemnity Co. v. Jones, 201 S.W.2d 129 (Tex.Civ.App.—San Antonio 1947, writ ref'd n. r. e.); Texas General Indemnity Company v. Thomas, 428 S.W.2d 463, 467 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). The record reflects that appellee testified he made a report of the injury to his foreman at approximately 4:30 in the afternoon the same day he was injured. Witness John Hadley admitted on cross-examination by appellee's counsel that it was possible appellee had told him of the injury between January 23 and February 10. We overrule these points.

Appellant in points of error 49, 54 through 68 complains of the submission and answers to Special Issues 19, 20 and 21, such issues inquiring as to whether medical care was required as a result of the injury, and whether appellant failed to furnish such care along with the reasonable cost thereof. Appellant's argument on these points is couched in terms of there being no evidence and insufficient evidence that any request was made to appellant to furnish medical care to appellee and accordingly there is no evidence of any refusal of appellant to furnish such medical care.

It has been repeatedly held that notice of the injury within the time

specified by Vernon's Ann.Civ.St. art. 8307, § 4a, is sufficient notice to invoke section 7 of article 8306, V.A.C.S., and thus allow recovery for reasonable medical expenses incurred due to an injury covered by our Workmen's Compensation Statute. In the case of Trinity Universal Insurance Company v. Farley, 408 S.W.2d 776 (Tex.Civ. App.—Tyler 1966, no writ) it was asserted that because it was not shown by the insurance carrier the injured workman at any time requested the carrier to furnish him treatment or services, nor that the carrier ever refused to provide such services, that the workman was thereby precluded from recovering expenses for medical services. The court answered this contention stating:

"We do not understand that Section 7 of Article 8306 of V.A.C.S. precludes recovery here under the facts because appellant was not requested to furnish such medical care. We think that the provisions of Section 7 and the decision construing it clearly shows that the intent of the law is that the carrier has the responsibility of furnishing all reasonable and necessary medical care for any compensable injury under the Texas Workmen's Compensation law after proper notice thereof has been given."

Likewise, in the case of Texas Employers' Insurance Association v. Steadman, 415 S.W.2d 211 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.) this court held a request for medical services was not necessary where notice had been previously given. Also see: Travelers Insurance Company v. Hernandez, 276 F.2d 267 (5th Cir. 1960); United States Fidelity & Guaranty Company v. Camp, 367 S.W.2d 952 (Tex.Civ. App.—Houston 1963, writ ref'd n. r. e.). In the case before us, notice was given of the injury as heretofore discussed. The record reflects that testimony was adduced concerning the medical bills along with the introduction of such bills. Further, there is evidence in the record that appellee requested that the medical bills be paid and that appellant refused to pay them. Appel-

lant's points of error 49, and 54 through 68 are overruled.

■ Appellant, in point of error 23, complains of the admission of testimony by Mrs. Gibson to the effect that appellee told Tom Davis, a fellow employee, that he had been injured on the job. Appellee asserts this testimony was admissible as a prior consistent statement for the reason that appellant was contending appellee's claim was a recent fabrication. While testimony by persons to whom appellant had made statements regarding any injury he sustained may have been admissible under the recent fabrication exception, the testimony admitted into evidence in this case was from a third person, Mrs. Gibson, and not one of the parties to whom the statements were made. Therefore, the testimony of Mrs. Gibson as to statements made by appellee to another person would be hearsay and inadmissible.

Appellant contends the testimony of Mrs. Gibson, being hearsay, was prejudicial in that it caused the jury to believe Tom Davis was an agent to whom notice could be given within the definition of notice in the court's charge. We do not agree. There was no testimony that Tom Davis or any other fellow employee of appellee was an agent to receive notice for the insurance company or subscriber. The testimony of Mrs. Gibson consisted of statements only to the effect that appellee had stated to other persons that he had been injured. While the method of adducing this testimony was improper, we do not believe the substance of it was reversible error. Rule 434, Texas Rules of Civil Procedure.

■ Appellant objects to the admission of evidence concerning the failure of Tom Davis and Glen Moody to appear for trial in points of error 24 and 25. The substance of the testimony by Mrs. Gibson in this area was that Tom Davis and Glen Moody had been scheduled as witnesses for appellee, that Davis had gone on vacation and that Moody would not be able to appear. Appellant objected to the testimony

of Mrs. Gibson concerning the absence of Davis but made no objection to essentially the same testimony concerning Moody. Even assuming arguendo that part or all of the testimony in this regard was improper, the testimony concerning Moody was admitted without objection. Such testimony, as heretofore stated, was essentially of the same substance as that elicited concerning Davis; thus, any objection to this type of evidence would be waived and in any event would be harmless error. Appellant's points of error 24 and 25 are overruled.

 Appellant in point of error 75 complains of the submission of special issue number 18 and its accompanying definition as heretofore set out, stating that it is global and constitutes a comment on the weight of the evidence. Although appellant has not specifically briefed this point of error, we have examined special issue 18 and its definition and find no merit in appellant's point. The issue and definition submitted by the trial court have been repeatedly approved in Workmen's Compensation cases and is identical to the suggested special issue in this area found in Texas Pattern Jury Charges, Vol. 2, Sec. 24.01, page 101. We believe the issue submitted, sufficiently limited by the accompanying definition, was proper in this case.

 Appellant, in points of error 45 through 47, complains of the trial court's action in overruling objections to the testimony of witnesses Joe Steuard, Grandville Staggs and Albert Lytle concerning the reputation of appellee for truth and veracity. The rule in Texas regarding the admissibility of evidence of reputation for truth and veracity is stated in Grant v. Pendley, 39 S.W.2d 596 (Tex.Comm'n App. 1931) as follows:

"We therefore announce the rule to be that supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of the action directly involves the character of a party, where a witness has been impeached, or where a party by his pleading or evidence charges his adversary with the commission of a crime involving moral turpitude."

See also: Waggoman v. Fort Worth Well Machinery & Supply Co., 124 Tex. 325, 76 S.W.2d 1005 (1934). It has been held that contradictory evidence is not sufficient; the evidence must be in the nature of impeachment. Livestock Feeder Company v. Few, 397 S.W.2d 297 (Tex.Civ.App.— Waco 1965, writ ref'd n. r. e.).

 The record in this case contains impeachment testimony adduced by cross-examination of appellant's counsel prior to any testimony elicited as to appellee's reputation for truth and veracity. Most of the impeachment testimony was through the introduction of various statements made in depositions and in written documents. Appellant used these instruments, after a proper predicate was laid, to impeach appellee through prior inconsistent statements. See: 1 McCormick & Ray, Texas Evidence, §§ 692 and 722 (2d ed. 1956). Actually, the only evidence adduced concerning appellee's reputation for truth and veracity was from witness Steuard who testified: "Well, in any dealings or any connection I have had with him, he surely has been in a truthful or straightforward or whatever you call it—." Witnesses Staggs and Lytle did not state whether they considered appellee's reputation for truth and veracity to be good or bad. Even assuming arguendo that there was no impeachment testimony in the record as to appellee, we believe the testimony of witnesses Steuard, Staggs and Lytle would be harmless. Rule 434, T.R.C.P.; Livestock Feeder Company v. Few, supra. Appellant's points of error 45 through 47 are overruled.

 By points of error 69 through 74 appellant asserts that the answers to special issues 1 through 4, 6 and 8 are based upon the insufficient evidence and are against the great weight and preponderance of the

evidence. Having reviewed the entire record we cannot say the answers to the above noted issues are based upon insufficient evidence or are so against the great weight and preponderance of the evidence so as to be manifestly unjust and wrong. In re King's Estate, 150 Tex. 662, 244 S.W. 2d 660 (1951). The evidence in regard to these points of error as well as the contentions of appellant in regard thereto have been discussed previously. While the issues were vigorously contested, the jury may believe all, part or none of the testimony of the witnesses.

Appellant, in points of error 30 through 44, seeks reversal of the trial court's judgment on the basis of improper jury argument by appellee's counsel. Appellant's points 30 and 31 consist of complaints that appellee's counsel advised the jury of the effect of their answers. Specifically appellant complains of several statements made in conjunction with these points of error, the first being to the following argument:

". . . They say they didn't get notice within thirty days, which you are required to have to give under law, or you are out.

"MR. HARLAN: May it please the Court, we object and ask the Court to instruct the jury not to consider that argument.

"THE COURT: Yes, sir, I'll sustain that objection. The jury will not consider that portion of Mr. Gibbins' argument.

"MR. GIBBINS: All right. They pled it, or said it. They didn't get notice in thirty days. They did that. They said that. All right."

There was no objection to the last statement made.

Under the same points of error appellant complains of the following argument:

"MR. GIBBINS: Then you come on over here and it asks you, has Ray-mond Gibson sustained or will he sustain any partial incapacity? And, you know, that's one of the defenses in the case, that—

"MR. HARLAN: May it please the Court, we object to this; informing the jury of the effect of the answer, and we object to it. It's improper argument.

"THE COURT: Please confine your argument to the issue, Mr. Gibbins.

"MR. GIBBINS: All right."

At this point no request was made by appellant's counsel for a specific ruling on the objection or a request that the jury be instructed not to consider the statements made by appellee's counsel. Mr. Gibbins then continued:

"Well, at any rate, the judge asks you whether or not Raymond has sustained or will sustain any partial incapacity, and we say that No. 8 should be answered no. No. 8 should be answered no, for the reason that His Honor—

"MR. HARLAN: May it please the Court, we object to blackboard argument as improper argument, and we object to writing answers on the blackboard.

"THE COURT: I'll overrule that objection.

"MR. HARLAN: Note our exception. May it go straight through to any other?

"THE COURT: Yes.

"MR. GIBBINS: Stay with me, folks. That's all I'm asking. No. 8 should be answered no, because the judge tells you that a man, cannot be totally disabled and partially disabled at the same time."

While appellant complains that the foregoing statements of appellee informed the jury of the effect of their answers, through the use of the terms "we say," and "Stay

with me, folks" no objection was made to such argument. As shown above the only objection made at this point was to the use of a blackboard by appellee's counsel, such matter being a separate point of error to be discussed later.

While it is settled that it is improper for counsel to inform the jury of the effects of their answers, we do not believe reversible error was committed by the foregoing statements of appellee's counsel. It has been held that references to certain issues as "defensive issues" and as "scatterblast issues of the defendant" were not reversible error. Old Colony Insurance Company v. Messer, 328 S.W.2d 335 (Tex.Civ.App.—Beaumont 1959, writ ref'd n. r. e.). Use of the terms "Otherwise school is out" analogous to the "or you are out" statement in the present case, has been held not reversible error. Texas & New Orleans Railroad Company v. Arnold, 381 S.W.2d 388 (Tex.Civ.App.—Beaumont 1964, appeal dismissed at 388 S.W.2d 181; Tex.Sup.1965).

Further, it should be expressly noted that objections were made and sustained to the foregoing argument of appellee. The presumption is that the instruction to disregard the argument was followed by the jury in its deliberations. Texas Employers' Insurance Association v. Rubush, 337 S.W.2d 501 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.). Therefore, we do not believe the foregoing statements by appellee's counsel, standing alone, constitute reversible error and accordingly overrule appellant's points of error 30 through 44.

Appellant contends in point of error number 32 that the trial court erred in overruling its motion for mistrial based upon arguments to the jury wherein appellee's counsel made an appeal to the jury to place themselves in the position of the appellee. Appellant's point apparently refers to the following portion of appellee's argument:

". . . Just remember Danny Frye's testimony and that other man, Max, that worked there thirty-three years, their own witnesses, and ask yourself if he was an honest man and a hardworking man. You bet. They pulled out some stuff and they went way back thirty-three years of personnel files and proved that he had a cuss fight or a fight or something like that, and they tried to throw all the mud that they could get together out of those personnel files. I'm just proud that they don't have my Army files or yours or your—

"MR. HARLAN: May it please the Court, we object to this argument. It is improper.

"MR. GIBBINS: Why?

"MR. HARLAN: It is asking the jury to place themselves in the position of the Plaintiff. Inflammatory and it's wrongfully prejudicial.

"THE COURT: I think it refers to matters not in evidence. I will sustain it."

Appellant presents no discussion or authorities in reference to this particular point of error. While the brief reference in regard to personnel files may be improper we do not believe it was of such a nature so as to constitute reversible error in and of itself. Point of error number 32 is overruled.

Appellant complains in point of error number 37 of the trial court's action in permitting appellee's counsel to write the answers to various special issues on a blackboard during the argument to the jury. In Texas Employers' Insurance Association v. Cruz, 280 S.W.2d 388 (Tex.Civ.App.—San Antonio 1955, writ ref'd n. r. e.) wherein the court stated:

". . . Therefore, we see no reason why counsel for appellee could not write upon a blackboard the number of the issue and opposite thereto the answer he desired, so that the jury might learn

these answers not only from listening to what the attorney had to say but also from seeing them written upon a blackboard."

The court also stated that even if it was error to write the answers to the special issues on a blackboard it would not be reversible error. See also: Magnolia Petroleum Company v. Herman, 295 S.W.2d 430 (Tex.Civ.App.—Austin 1956, writ ref'd n. r. e.). We believe the reasoning and holding in the Cruz case controls the disposition of this particular contention raised by appellant.

Appellant contends in points of error 39 through 44 that the jurors took notes on the answers suggested by appellee's counsel during the jury argument and further such jurors took the notes into the jury room during their deliberations and that such conduct was error. It should be noted that appellant states in its brief concerning this matter that no claim of jury misconduct is made.

 Appellant contends the trial court should have instructed the jurors to surrender any notes taken by them before they retired to the jury room for their deliberations pursuant to such request of appellant. This contention is based upon a motion for mistrial in which the following grounds were stated:

"II

"If the foregoing motion is overruled and without waiving it, the Defendant moves the Court to inquire of the members of the jury whether either of them have written down the answers suggested by counsel for either party, and if so, to direct the juror or jurors who have said answers to surrender the notes to the Court.

"III

"If the foregoing motions are overruled and without waiving either of them, the Defendants moves the Court to in-quire of the jury whether the jurors have any notes taken during the trial, and if so, to surrender said notes to the Court at this time."

At the time the foregoing motion was presented to the court, the record is void of any evidence that any juror had taken notes during the trial. No evidence was presented concerning this matter to the trial judge. The taking of notes during the trial of a cause by a juror and the subsequent use of such notes should be attacked by a motion for mistrial based upon jury misconduct. No motion and accompanying evidence was tendered in this case. Further, a litigant in order to avail himself of the benefit of such motion must show by competent proof that such conduct on the part of the jury was prejudicial and harmful. See: 3 McDonald, Texas Civil Practice, §§ 14:15 and 14:16.1.

Appellant contends in points of error numbers 35 and 38 that the trial court erred in overruling appellant's objection to argument wherein appellee's counsel advised the jury that appellee's injury of 1954 was not a compensable injury for the reason that appellee did not file a workmen's compensation claim.

The following argument was had by counsel for appellee:

"MR. GIBBINS: . . . And Raymond said that he never did file, a Workmen's Compensation claim. And never did receive a penny, and he went to a chiropractor—

"MR. HARLAN: Now, we object to 'never did receive a penny. (sic) There isn't any evidence. And ask the Court to instruct the jury not to consider that.

"THE COURT: I'll sustain that objection to that portion of the argument and instruct the jury not to consider that portion for any purpose. Please proceed.

"MR. GIBBINS: Well, he never did file a Workmen's Compensation claim, and he did not receive any Workmen's Compensation.

"MR. HARLAN: Your Honor, I—

"THE COURT: Same ruling and I will instruct the jury not to consider that for any purpose."

And later the following argument was had:

"MR. GIBBINS: . . . We submit that it was not a compensable injury. . . . Now, why do I say that? Because Raymond didn't even file a Workmen's Compensation claim, and that is undisputed; that he didn't get any compensation or file a compensation claim.

"MR. HARLAN: May it please the Court, that's the fourth time he repeated this, that he didn't get any compensation. And, Your Honor, that is something the Court has—I can't go outside the record, but there is—well, that's improper, and it is outside the record, and it is in violation of the Court's instructions, and I just don't think that that can be cured by an instruction, this repeatedly—and I am going to have some other motions to make in connection with it, Your Honor.

"THE COURT: I think this portion of the argument was that no Workmen's Compensation claim had been filed.

"MR. GIBBINS: Yes, sir.

"THE COURT: I'll overrule your objection.

"MR. HARLAN: Note our exception."

■ There is evidence in the record that appellee did not file a Workmen's Compensation claim in relation to his injury of 1954. No objection was raised as to this line of testimony. An attorney may draw from facts in evidence all logical inferences that are reasonable, fair or legitimate in his argument to the jury. J. D. Wright & Son Truck Line v. Chandler, 231 S.W.2d 786 (Tex.Civ.App.—Galveston 1950, writ ref'd n. r. e.). We find no merit in points 35 and 38.

■ By point of error 36 appellant contends improper argument wherein appellee's counsel purportedly cast unjust criticism on appellant's counsel. Specifically, appellant complains of the following argument:

"And then another thing. They talked about not being honest. Mr. Harland in his pleadings right here, under oath, Defendant denies under oath that the claim asserted by Plaintiff was ever filed, and alternatively denies it was filed within six months prescribed by statute, and further denies the existence of good cause. All right. And that is sworn to by Mr. Hoe (sic) Harland right here, attorney for this insurance company. Ladies and gentlemen, then he turns right around and stipulates with us in court that this was filed on June 26, 1970. Now, I ask you, from January 16 or January 23 down to June 26, '70, that's five months. Why did they give an oath that he didn't file one within six months? People are human. That's all I am saying".

In regard to this argument appellant cites as authority for reversal the case of Texas Employers' Insurance Association v. Butler, 287 S.W.2d 198 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n. r. e.) wherein the following statements were made during jury arguments:

" ' . . . Now in talking about people not always sticking to the truth—where is that request for admission?' . . . 'You heard George Willingham say I am working for May & Taylor out there, I am the foreman. This man told me about being injured, he said on the pipe rack three days after it happened and I took him up to Dr. Ogden and I made a report to the Texas Employers Insurance Association within ten days. But on February 10, 1955 Mr. Sherrod (defendant's attorney) under oath, we asked him this question to admit or deny that plaintiff's employer had actual knowledge of said accidental injury within 30 days

from the 6th of September, 1954. Mr. Sherrod is a lawyer here. In response to your requests for admissions in this cause dated February 3, 1955, that the Defendant Texas Employers says that request No. 5 that they had actual knowledge of the injury is denied.' . . . 'Gentlemen I guess we all have some human failings. Apparently Mr. Sherrod has some along with the rest of us.' "

Mr. Sherrod then objected to the statements made by opposing counsel and the court sustained the objection but denied Mr. Sherrod's request that the jury be instructed not to consider it.

Appellant contends appellee's counsel knew the denial of the filing of a claim before the Board was directed toward the proposition that the accident alleged by appellee in the district court had never been before the Board. Therefore, appellant contends appellee's counsel misstated the effect of appellant's sworn pleading thus leaving the impression before the jury that appellant's counsel had sworn to an untruth. The statements made in the Butler case are closely analogous to the statements present in the case before us. The Butler case, however, was decided upon the basis of three areas of error. The court, in the Butler case, did not expressly hold that the objectionable statements to be of the "incurable" type. The court stated, "(W)e think the trial court erred in overruling appellant's request to instruct the jury to disregard the argument of which complaint is made," thus implying that had the instruction been given, any reversible error would have been cured. In the case before us no objection was made to the argument of appellee's counsel and, of course, no request for a jury instruction. By its failure to timely object and request an instruction appellant has waived complaint to the argument.

■ Appellant's point of error number 34 deals with the following statements made by appellee's counsel:

" . . . I just kind of—I guess it's the way of us country people, we kind of resent a little bit influence, and I don't challenge these companies for being large. Heck, America is—we have helped make these companies large, but don't forget it was the little man that helped make them large. And never should America reach the stage where the large company so controls the individual—and I'm not talking about civil rights or constitutional rights; I'm talking—

"MR. HARLAN: I object to this, may it please the Court, emphasizing the size of the company, as outside the record. It is inflammatory and wrongfully prejudicial.

"MR. SPIVEY: Your Honor, I was just giving—I just got through telling the jury that in my opinion—and I don't criticize the company for the size.

"THE COURT: Yes, sir. However, I believe I will sustain the objection and instruct the jury not to consider that portion of the argument for any purpose.

"MR. HARLAN: We reserve the exception to the further remark of counsel before the Court's ruling, that we—

"THE COURT: I have sustained—

"MR. HARLAN: Thank you.

"THE COURT:—and instructed the jury not to consider it for any purpose.

"MR. HARLAN: Thank you. I appreciate that. But he made some more argument there before. Will you instruct the jury on that? I think you have covered it on all of his argument, Your Honor.

"THE COURT: Yes, sir. The jury will not consider any remarks of counsel for any purpose in this case."

Appellant contends the foregoing statements consist of an attempt to contrast between the meager resources of the plaintiff and the large corporate defendants. It

is improper to contrast the wealth of the parties to a suit in an effort to prejudice the jury against one of such parties. Appellant cites as authority for reversal the case of Texas Employers' Insurance Association v. Hacker, 448 S.W.2d 234 (Tex. Civ.App.—Fort Worth 1969, writ ref'd n. r. e.) in which the following statement was held to be reversible error: "I apologize to the Jury also for becoming a little steamed up. When I get a little steamed up I see an all powerful insurance company kick a workman down. Never paid him one penny compensation." The court in the Hacker case stated:

> "Argument No. 4 saying that when plaintiff's counsel gets a little steamed up he sees an all powerful insurance company kick a workman down was in our opinion error. We believe that no instruction the trial court might have given would have the effect of withdrawing the damage done by such statement in this case. It should not have been made."

The statements made by appellee's counsel, while not as strong as those made in the Hacker case, were improper. However, we do not believe they had reached the stage of being "incurable" and in view of the instructions given by the court, hold that such statements did not constitute reversible error.

In point of error number 33 appellant states that the trial court erred in overruling appellant's motion for mistrial based upon improper argument wherein appellee's counsel made direct appeals to the jury to return a verdict in favor of appellee.

Appellant, in its brief, argues that the following statements were error:

> " . . . And that ought to be yes, because it says right here, any notice to an agent is notice to the company. Stay with us on that one, folks."

At this point no objection was made to these statements of appellee's counsel by appellant. Further, appellant complains of the following:

> " . . . This is the last time I can ever talk to you on behalf of Raymond and his family, and I am asking you—and I've no pride, no vain, no nothing when it comes to representing a client, and I am asking you to bring in a verdict for our client. We are right in this case.

> "Thank you.

> "MR. HARLAN: May it please the Court, I object to the argument, asking an appeal for a verdict for a particular person; violation of the Court's instructions.

> "THE COURT: I'll sustain that objection to the last portion of the argument and instruct the jury not to consider it.

> "MR. HARLAN: And we will reserve motion at the proper time on that, Your Honor.

> "THE COURT: All right."

And later the following discourse was had:

> " . . . But your verdict will come in here in a few minutes or few hours or tomorrow, and your verdict is the opportunity to right the wrong. It is the opportunity to assess the responsibility here where the responsibility goes."

No objection was asserted by appellant's counsel to these statements at the time they were made.

In regard to the foregoing statements by appellee's counsel we do not believe it was improper for appellee's counsel to state to the jury "We are right in this case." While it is error to ask the jury to answer issues in a particular manner so that a party might win, the asking of the jury to answer special issues a certain way under the evidence is not improper. Brown v. Poff, 387 S.W.2d 101 (Tex. Civ.App.—El Paso 1965, writ ref'd n. r. e. at Tex., 392 S.W.2d 113); Texas Employers' Insurance Association v. Mendenhall, 334 S.W.2d 850 (Tex.Civ.App.—Fort Worth 1960, writ ref'd n. r. e.); Burrow v.

Davis, 226 S.W.2d 199 (Tex.Civ.App.—Amarillo 1949, writ ref'd n. r. e.). In the case before us the statement, "I am asking you to bring in a verdict for our client" was made in appellee's argument after a discussion of the issues prefaced with the term *under the evidence*. Further, if such statement or statements be error it is noted the trial court sustained an objection to such statements and instructed the jury to disregard them. Assuming arguendo such statements were in error, they were not of an incurable nature and the court properly instructed the jury.

 Appellant's contention that the last quoted portion of appellee's argument above was error has been waived as no timely objection was registered by appellant. Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.Sup.1968); State v. Brunson, 461 S.W.2d 681 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.); Williams v. General Motors Acceptance Corporation, 428 S.W.2d 441 (Tex.Civ.App.—San Antonio 1968, no writ); Consolidated Underwriters v. Whittaker, 413 S.W.2d 709 (Tex.Civ.App.—Tyler 1967, no writ); City of Lampasas v. Roberts, 398 S.W.2d 612 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.); and Turner v. Turner, 385 S.W. 2d 230 (Tex.Sup.1964).

. [40] The rule stated by our Supreme Court in Aultman v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596 (1953) in regard to whether or not a judgment will be reversed because of the argument of counsel is as follows: "Before a judgment is reversed because of argument of counsel two things must appear: the argument must be improper, and it must be such as to satisfy the reviewing court that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." The Aultman case was decided after the adoption of Rule 434 and noted that cases decided prior to the adoption of such rule would have little value as precedents. Whether the impropriety of the argument presented probably influenced the jury unfavorably to a party is to be determined by the appellate court's judgment in light of the record as a whole. Southwestern Greyhound Lines, Inc. v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951); Texas Employers' Insurance Association v. Butler, supra. In reviewing the entire record, quite voluminous in this instance, we are unable to hold that the errors complained of, taken cumulatively, caused the rendition of an improper verdict.

The judgment of the trial court is affirmed.